No. 48,891

STATE OF KANSAS, *Appellee,* v. DENNIS G. SANDERS, *Appellant.*

(574 P.2d 559)

Opinion filed December 10, 1977.

*Robert Osborn,* of Stockton, argued the cause and was on the brief for the appellant.

*Randall W. Weller,* special prosecutor, argued the cause, and *Curt T. Schneider,* attorney general, and *William B. Elliott,* of Hill City, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Dennis G. Sanders was convicted of first degree murder (K.S.A. 21-3401) in the death of Linda Leebrick of Hill City, Kansas. Sanders relied on the defense of insanity and filed notice thereof in accordance with K.S.A. 22-3219. He appeals from that conviction. The evidentiary facts leading to the arrest of Sanders are not in conflict.

Linda Leebrick, a school teacher in the Hill City schools, failed to appear for classes. On investigation the officers found the door to her apartment had been smashed and she was not there. The police organized a manhunt and her body was located several days later in a secluded area near Hill City. Miss Leebrick had

been badly beaten. She had suffered a skull fracture and a severed trachea. A tire print and the print of a tennis shoe were found at the scene of the crime. Several bloody tree limbs found at the scene appeared to be the murder weapons.

The Kansas Bureau of Investigation was called into the case. A coroner's report and various laboratory reports confirmed that death had been caused by blows to the head and neck. There was no evidence of rape. The tire print had been made by a pickup truck which had a flap of rubber missing from one tire. The tennis shoe print had a rippled tread. Blood from the victim was spattered in the area where the body was located and blood was found on the limbs and leaves of a tree nearby. Sanders became a suspect when it was discovered a tire on his pickup truck had a flap of rubber missing which compared favorably with the defect discovered in the tire print left at the scene of the crime. It was further discovered that Sanders had a pair of tennis shoes with rippled soles. He voluntarily turned the shoes in to the sheriff. They had been laundered recently. A laboratory examination of the shoes uncovered the presence of human blood of the same type as that of the victim. Sanders was arrested and later confessed to committing the crime.

On appeal the defendant-appellant raises several alleged trial errors which we will consider in the order presented in his brief. He first challenges the qualifications of two jurors who sat during the trial and who had previously been spectators, either during portions of the preliminary hearing or during a pretrial hearing concerning this same case.

Our examination of the record discloses that these two jurors were examined separately on *voir dire.* Their attendance at these previous hearings was brought out during *voir dire* and neither juror was challenged separately for that cause.

Our statute K.S.A. 22-3410 contains a list of grounds upon which a juror may be successfully challenged for cause. This statute provides that a party may challenge any prospective juror for cause and each challenge shall be tried to the court. Presence as a spectator at some pretrial hearing in the case is not one of the grounds specified. The only ground listed in the statute which could possibly authorize disqualification of the two jurors is listed under (2) (*i*) which authorizes a party to challenge a juror for cause when:

"His state of mind with reference to the case or any of the parties is such that the court determines there is a doubt that he can act impartially and without prejudice to the substantial rights of any party."

The statute requires all challenges for cause to be made before the jury is sworn to try the case.

Appellant cites no Kansas cases directly in point; however, in *State v. Scott* (1895), 1 Kan. App. 748, 42 Pac. 264, it is held:

"A juror who was in the court-room and heard the evidence upon a plea in bar is not thereby disqualified to serve as a juror in the original case." (Syl. 3.)

There is no dearth of decisions in other jurisdictions on this point. The cases fall into two categories: (1) when a juror has participated in the trial of a criminal case or some related hearing involving the same defendant, and (2) when a juror's presence at an earlier trial or some related hearing involving the same defendant was merely as a bystander, one who had no interest in the proceeding other than curiosity. See Anno: Juror—Disqualification—Criminal Case, 6 A.L.R.3d 519, § 2, p. 526. In the latter category it is generally held that mere presence as a spectator at a prior trial or at some hearing related to a present trial involving the defendant does not, standing alone, disqualify a juror for cause. This general rule is in accord with our statute and case law.

In *State v. Paxton,* 201 Kan. 353, 440 P.2d 650, cert. den. 393 U.S. 849, 21 L.Ed.2d 120, 89 S.Ct. 137, a juror's wife was a first cousin of the wife of the complaining witness. The juror in the *Paxton* case was never challenged for cause prior to the trial and this court said:

" . . . Ordinarily, a question touching upon a juror's qualifications, if not raised until after the verdict is rendered, comes too late and is not available for the purpose of the defendant's obtaining a new trial. [Citations omitted.] K.S.A. 62-1410 [now K.S.A. 22-3410] requires that all challenges for cause be made before the jury is sworn, except where the cause for challenge is not discovered until after the jury is sworn and before the introduction of evidence. When a party, knowing at the time of impanelling the jury that a juror is incompetent, fails to challenge for cause, he waives any right to make complaint upon that ground thereafter. [Citations omitted.]" (201 Kan. pp. 359-360.)

Under K.S.A. 22-3410 (2) (*i*) before a juror should be excused for cause the court must determine that the juror's state of mind with reference to the case or any of the parties is such there is a doubt that the juror can act impartially and withour prejudice to the substantial rights of any party.

Whether a prospective juror is qualified to sit in the trial of a

case is a question for determination by the trial court and its ruling will not be disturbed unless it is clearly erroneous or there has been an abuse of discretion. (*State v. Amodei,* 222 Kan. 140, Syl. 4, 563 P.2d 440.)

Accordingly appellant's present challenges of these two jurors must fail for two reasons: First, the alleged cause for challenge was known during *voir dire* yet it was not raised before the jury was sworn; and second, it has not been shown the jurors' states of mind prevented them from acting impartially and without prejudice to the substantial rights of the defendant. The trial court did not err in permitting the two jurors to serve.

The next point on appeal involves the admission into evidence of appellant's oral confession. Appellant's complaint of coercion is based upon (1) expert testimony which established that appellant had a low intelligence quotient and (2) the use of a polygraph examination by the investigating officers. Appellant contends the circumstances which preceded the taking of the statement constituted coercion, rendering the confession involuntary.

When the victim was discovered missing on April 21, 1976, the police interviewed appellant along with other neighbors who lived in the same neighborhood. Appellant lived across the street from Linda Leebrick. After the victim's body was discovered and the distinctive tire track was discovered appellant was again interviewed and he consented to an examination of his pickup which included photographing and measuring the tires. At that time he was asked and denied owning tennis shoes but later that same evening appellant voluntarily appeared at the sheriff's office and handed the K.B.I. agents a pair of tennis shoes. He advised them he had lied about not owning tennis shoes and didn't know why. After an overnight laboratory examination was made of the shoes appellant was picked up. At this time he became the prime suspect.

After being advised of his *Miranda* rights he was questioned and he agreed to a polygraph examination which was administered. After the polygraph examination he was interviewed further by K.B.I. agent Lyons and then appellant confessed to the murder. Later he repeated his oral confession in the presence of K.B.I. agent Pruter. Before the two agents could arrange for a court reporter to obtain appellant's statement in writing appellant

asked for an attorney. The interrogation ceased at this point and no further effort was made to obtain a written statement.

A motion to suppress the confession was heard prior to trial. The trial judge after considering the evidence held the statement of the appellant was voluntarily given and was admissible at the trial.

The appellant testified at the hearing and contends on appeal that the statement was taken after he had requested and had been refused an attorney. He further contends that the use of the polygraph constituted coercion and rendered the statement involuntary because of his limited intelligence.

"Coercion in obtaining a confession from an accused can be mental as well as physical. In determining the voluntariness of a confession of crime, the question in each case is whether the defendant's will was overborne at the time of the confession; if so, the confession cannot be deemed the product of a rational intellect and a free will. [Citation omitted.] In determining the admissibility of a statement of the defendant obtained during custodial interrogation the trial court must weigh any conflicting evidence and make its findings based on the totality of the circumstances. If there is substantial competent evidence to support the trial court's findings that the defendant voluntarily, knowingly and intelligently waived his Fifth and Sixth Amendment rights, such findings will not be disturbed on appellate review. . . ." (*State v. Soverns*, 215 Kan. 775, 777, 529 P.2d 181.)

The testimony of the appellant at the suppression hearing was in sharp conflict with other testimony elicited by the state from the agents. These conflicts in the testimony raised questions of fact to be determined by the trial judge. See *State v. Wilson*, 220 Kan. 341, 552 P.2d 931, and *State v. Kanive*, 221 Kan. 34, 558 P.2d 1075. There was substantial competent evidence to support the trial court's findings and they will not be disturbed on appeal.

Appellant's contention that the use of the polygraph amounted to coercion has previously been addressed by this court in *State v. Blosser*, 221 Kan. 59, 558 P.2d 105, where we hold:

"The fact that incriminating statements are made by a defendant during the course of a polygraph examination does not of itself render such statements inadmissible. They are admissible where found to be voluntarily made.

"That incriminating statements were made during the course of a polygraph examination is a factor which may be considered on the issue of voluntariness but such fact does not of itself make the statements inadmissible." (Syl. 3 and 4.)

There is an insufficient showing in the record to support the other arguments on coercion arising from the use of the polygraph. It does not appear that threats or promises were made. There is nothing to indicate whether appellant was or was not

advised that the results of a polygraph examination could be used at the trial. No error appears on this point.

Appellant next argues that on *voir dire* all of the prospective jurors admitted that they had heard about the Sanders case and had read newspaper articles concerning the death of Linda Lee-brick and the arrest of the appellant Sanders. Appellant concludes that this establishes general prejudice in the community which prevented a fair trial. The publication of articles in newspapers and the news media does not *per se* establish prejudice in the community against the defendant. Prejudice in the community must be shown as a demonstrable reality. (*State v. Gander,* 220 Kan. 88, 551 P.2d 797; *State v. Randol,* 212 Kan. 461, 463, 513 P.2d 248.)

Appellant filed a motion for change of venue and in support of the motion introduced a large number of newspaper articles which had appeared in the Hill City and Hays papers. He obtained copies of many short news releases which were broadcast over the radio and television stations in Hays and Goodland. In addition he filed ten personal affidavits from residents in the Graham County area to the effect that the affiants were of the opinion after reading the reports in the news media that Sanders had committed the crime or that he could not have a fair trial because of prejudice in the county.

During argument on the motion the defense attorney suggested that Sanders was removed from the Hill City jail and transported to Hays for his own safety. He further suggested that community feeling must have been so high that there was a possibility of a lynch mob. This was refuted in newspaper articles which reported an interview with the sheriff at the time Sanders was moved to Hays. The sheriff stated that after a psychiatric evaluation of Sanders was made it was suggested by the county attorney and others that for Sanders' own self protection he should be placed in a jail which had twenty-four hour supervision. There was some possibility of suicide. Hill City did not provide twenty-four hour supervision at the jail.

Some mention was made by the defense attorney at the hearing that there had been a further report of a cross burning in the front yard of the woman Sanders lived with prior to the time of the homicide. The alleged incident was not reported by any of the news media and was apparently without substance. No evidence

was introduced to support this statement by defense counsel.

At the close of the hearing on the motion for change of venue the trial judge noted that neither the victim nor the appellant had relatives living in the county; that the news articles were objective and not inflammatory; that few people were interested enough to attend the widely publicized hearing for change of venue; and that because of the type of crime and the general publicity over the entire state it was doubtful if there were any other counties in the area where news of the crime had not reached the residents. The judge stated he was reserving his ruling on the motion for change of venue until after the jury selection and if during the selection of the jury prejudice in the community became apparent he would grant the motion. After the jury was selected the motion for change of venue was denied and the judge commented that 120 prospective jurors were summoned. Of the 120 only 70 persons were examined in obtaining the 37 jurors necessary before peremptory challenges were exercised. This provided a 12 person jury with one alternate. The judge noted the news media reporting had been on an objective basis without any attempt to influence the outcome of the trial and that a majority of the jurors chosen to serve were college graduates.

K.S.A. 22-2616(1) provides:

"In any prosecution, the court upon motion of the defendant shall order that the case be transferred as to him to another county or district if the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

The scope of review on refusal to grant a change of venue has been discussed previously:

"It has long been the law of Kansas that a change of venue in a criminal case lies within the sound discretion of the trial court. Before a change of venue to another county can be granted, it must affirmatively appear that in the county in which the cause is pending there exists such prejudice as to make it reasonably certain the defendant will be denied a fair trial. The ruling of the trial court on this question will not be disturbed if supported by competent evidence and if there is no showing of prejudice to the substantial rights of the defendant. . . ." (*State v. McLaughlin,* 207 Kan. 594, 597, 485 P.2d 1360.)

In *State v. Gander,* supra, the following rule is stated with approval:

"Before a change of venue is required prejudice must be shown as a demon-

strable reality. The publication of articles in local newspapers does not *per se* establish prejudice." (220 Kan. 88, Syl. 6.)

In *State v. Anderson,* 202 Kan. 52, 446 P.2d 844, it is held:

"In a criminal action on a motion for change of venue the burden of proof is upon the defendant to make it affirmatively appear that such prejudice exists in the community that it will be reasonably certain he could not obtain a fair trial. Failing in such proof the defendant cannot be heard to complain of the trial court's order overruling his motion." (Syl. 1.)

When the defendant on a motion for change of venue fails to sustain the burden of proof to show prejudice in the community which would prevent a fair trial the state is not required to produce evidence refuting that of the defendant. (*State v. Anderson,* supra, p. 55; *State v. McLaughlin,* supra, p. 598; and *State v. Randol,* supra, p. 464.)

Thus, it has been held (1) the burden of proof is on defendant, (2) not only prejudice must be shown but it must be such prejudice as to make it reasonably certain the defendant cannot obtain a fair trial, (3) there must be more than speculation, (4) the state is not required to produce evidence refuting that of the defendant, and (5) granting a change of venue lies within the sound discretion of the trial court and its ruling will not be disturbed if supported by competent evidence and if there is no showing of prejudice to the substantial rights of the defendant.

We have reviewed the articles published by the news media and have considered those factors mentioned by the trial judge when the motion for change of venue was denied. We note the time lapse (five months) between the publication of a majority of the news articles and the actual trial of the case. We further note that the defense in this case was insanity. We cannot say under the circumstances that the trial court abused its discretion in refusing a change of venue.

As the final point on appeal appellant urges this court to abandon the *M'Naghten* test of insanity and order a separation of the question of guilt from the question of mental disease, insanity, in this and future trials.

We have this day declined to abandon the *M'Naghten* test of insanity in *State v. Smith,* 223 Kan. 203, 574 P.2d 548. In addition the point was not preserved for consideration on appeal. The appellant at the trial requested an instruction covering the *M'Naghten* test of insanity and the same was given. Now he

cannot predicate error thereon after having made such request at the trial level.

As to appellant's argument that error flowed from failure of the trial court to separate the question of guilt from the question of insanity we point to our statute, K.S.A. 1976 Supp. 22-3428(1), which provides:

"When a person is acquitted on the ground that he or she was insane at the time of the commission of the alleged crime the verdict shall be 'not guilty because of insanity,' and the person so acquitted shall be committed to the state security hospital for safekeeping and treatment."

In *State v. Lamb,* 209 Kan. 453, 472, 497 P.2d 275, the denial of a bifurcated trial was claimed as error. In *Lamb* this court held that a trial court does not err in refusing a request for a bifurcated trial. The verdict form required by K.S.A. 1976 Supp. 22-3428 contemplates an unbifurcated trial. The statute has not been changed and this court declines to adopt the rule urged by appellant in view of the statutory procedural rules now in effect.

The judgment is affirmed.