No. 50,104

State of Kansas, *Appellee*, v. James Francis Levier, *Appellant*.

(601 P.2d 1116)

Opinion filed October 27, 1979.

*Pedro Luis Irigonegaray,* of Hawver & Irigonegaray, of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander,* district attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Miller, J.: James Francis Levier appeals directly to this court following his conviction of murder in the second degree, a class B felony, in violation of K.S.A. 21-3402. Levier was sentenced to a term of not less than 30 years nor more than life under the provisions of K.S.A. 21-4501 and K.S.A. 21-4504. Many issues are raised; each will be stated and discussed separately.

The facts, stated briefly, are these. On the morning of April 30, 1977, defendant came to his brother David's home at 723 Adams in Topeka. Betty Sue Germonprez was also living there. Defendant was in and out of the house that morning; meanwhile, he helped his mother move, and he drank some alcoholic liquor and smoked some marijuana. About 2 o'clock that afternoon he returned to his brother's house. Defendant and Betty Sue were in the kitchen; a verbal argument ensued; defendant struck Betty Sue, kicked her repeatedly in the face, and beat her about the head with a metal grate from the stove. She bled profusely, and died at the scene.

Defendant left the house and secured a ride with some friends

to the Pottawatomie Indian Reservation in Jackson County. He was arrested in Jackson County on the following day, May 1, and was taken to the Shawnee County courthouse where he was given the *Miranda* warnings; thereafter he made a statement admitting that he had beaten the decedent. First degree murder charges were filed on May 2. Upon trial, the jury returned a verdict finding the defendant guilty of murder in the second degree.

I. Admission of the defendant's statement or confession into evidence.

Defendant contends that his constitutional rights, as embodied in the *Miranda* warnings, were violated in that, according to his testimony at the *Jackson v. Denno* hearing, he twice demanded an attorney before making any statement, and the officers denied his request. The trial court held a full evidentiary hearing on the matter. A deputy sheriff and a Topeka police detective both testified that defendant made no request for an attorney in their presence. The detective who took the statement was present at all times during the explanation of the *Miranda* rights and the giving of the statement. After considering the testimony, the trial court found that the defendant knowingly waived his rights and did not ask for an attorney before or during the time he gave his statement.

In *State v. Higdon,* 224 Kan. 720, 722, 585 P.2d 1048 (1978), we stated this general rule:

"When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by the accused, determines the statement was freely, voluntarily, and knowingly given and admits the statement into evidence at the trial, the appellate court should accept that determination if it is supported by substantial competent evidence."

We cannot reweigh the testimony which the trial court carefully considered. Here there was substantial competent evidence to support the trial court's determination, and we will not disturb that ruling.

II. Jurisdiction to make the arrest.

Defendant, an American Indian, contends that he was arrested by state officers on the Pottawatomie Indian Reservation, and that only federal officers have jurisdiction to make arrests there. He cites no legal authorities supporting this claim.

18 U.S.C.A. § 3243 confers jurisdiction on the State of Kansas over offenses (with certain exceptions) committed by or against

Indians on Indian reservations. The trial judge reasoned that because of this grant of authority the State must also have jurisdiction to arrest Indians or others on Indian reservations pursuant to warrants issued on probable cause for crimes committed outside the reservation.

Case law from other jurisdictions supports this holding. *Anderson v. Britton,* 212 Or. 1, 20, 318 P.2d 291 (1957), *cert. denied* 356 U.S. 962 (1958), holds that the "inherent police power of the states applies both to Indians and to Indian country, except to the extent that the federal government has pre-empted the field." In *Tooisgah v. United States,* 186 F.2d 93 (10th Cir. 1950), it is held that Indians outside Indian territory remain subject to the general criminal law. And in *State ex rel. Old Elk v. District Court,* 170 Mont. 208, 552 P.2d 1394 (1976), the court upheld the arrest of an Indian made on Indian territory by a county sheriff pursuant to a warrant issued upon probable cause to believe that the defendant had committed a homicide outside Indian territory. The court noted that there was no statute authorizing extradition to and from the Indian reservation. That is still true.

We conclude that Kansas peace officers have authority to make arrests in Indian country within the boundaries of this state, upon warrants regularly issued, for offenses committed off the reservation. Whether defendant was arrested on the Pottawatomie reservation or off the reservation in Jackson County (and the facts are disputed), we hold that the arrest was valid.

III. Psychological damage sustained because of prolonged usage of harmful drugs.

Defendant merely states in his brief that he "has a well documented history of alcohol and drug abuse," and he asks that we "take judicial notice of the facts contained in James Levier's official records that are on file with the State Department of Corrections." He contends that the trial court erred in not ordering an examination as to the "psychological damage he had sustained because of prolonged exposure to harmful drug usage." Apparently the Department of Corrections records were not offered to the trial court or to those who examined or attempted to examine Levier pursuant to court order. No purpose would be served by examining them during the course of this appeal, and we decline to take judicial notice of them. The trial court ordered a psychiatric examination, and while it did not use the language now proposed by defendant, the trial court did not err.

IV. The requested bifurcated trial procedure.

Defendant claims that the trial court erred in failing to follow procedure statutorily required in Colorado whereby the issues raised by a plea of not guilty by reason of insanity are tried separately to different juries, with the sanity issues being tried first. See Colo. Rev. Stat. § 16-8-104. Defendant claims that a bifurcated trial, when an insanity defense is raised, "avoids prejudice to the Defendant, avoids jury confusion and . . . protects the Defendant's privilege against self-incrimination."

We have recently considered the matter, and have consistently held that failure to order a bifurcated trial is not reversible error. *State v. Sanders,* 223 Kan. 273, 574 P.2d 559 (1977); *State v. Lamb,* 209 Kan. 453, 497 P.2d 275 (1972). Our statutes, mentioned in *Sanders,* have not been changed, and we adhere to our earlier rulings. When, as here, the jury is properly instructed, no confusion should result. By trying all issues together, time and expense to both parties is conserved, and the single jury is given the entire picture; we discern no prejudice. Defendant indicates that he might wish to testify in one trial and not the other, if the issues were tried separately. A defendant has a similar decision to make where several charges are tried at one time. We can see no justifiable reason mandating separation.

K.S.A. 1978 Supp. 22-3302(3), providing for a determination of competency, states:

"No statement made by the defendant in the course of any examination provided for by this section, whether the examination shall be with or without the consent of the defendant, shall be admitted in evidence against said defendant in any criminal proceeding."

This section, which appears to be fashioned after 18 U.S.C.A. § 4244, protects the accused from statements made during the course of psychiatric examinations. We see no Fifth Amendment violations in the refusal of a bifurcated trial.

V. The *M'Naghten* or the A.L.I. rule.

Defendant urges error in the failure of the trial court to sustain his motion for adoption of the American Law Institute rule as the test of insanity, rather than the *M'Naghten* rule. The trial court instructed the jury on the *M'Naghten* rule in the language suggested by PIK Crim. 54.10.

Defendant urges us to adopt the A.L.I. rule. The issue has been discussed in many of our cases, and we have declined to make the change. See *State v. Sandstrom,* 225 Kan. 717, 595 P.2d 324 (1979); *State v. Sanders,* 225 Kan. 147, 587 P.2d 893 (1978); *State v. Smith,* 223 Kan. 203, 574 P.2d 548 (1977); *State v. Lamb,* 209 Kan. 453, 497 P.2d 275 (1972); *State v. Andrews,* 187 Kan. 458, 465-469, 357 P.2d 739 (1960), *cert. denied* 368 U.S. 868 (1961). The majority of this court is still of the opinion that the *M'Naghten* test should be retained. We find no error.

VI. Evidence at the preliminary hearing.

Defendant claims that his right to due process was impinged upon because the State did not present *all* of its evidence at the preliminary hearing. He cites no authority in support of this contention.

The State's burden at the preliminary examination is only to show "that a felony has been committed and there is probable cause to believe that a felony has been committed by the defendant." K.S.A. 1978 Supp. 22-2902(3). In *State v. Holloway,* 219 Kan. 245, 248, 547 P.2d 741 (1976), we said:

"The state need not present its entire case at a preliminary hearing; all that is required is a showing from the evidence that a felony has been committed and there is probable cause to believe the accused committed the crime."

Levier does not challenge the sufficiency of the evidence at the preliminary hearing to support the finding made, nor does he claim that exculpatory evidence was withheld. We find no error.

VII. Competency to stand trial.

Defendant claims that the trial court erred in finding him competent to stand trial because the record does not disclose psychiatric evaluation of the defendant by a physician trained in psychiatry. He claims K.S.A. 1978 Supp. 22-3302(3) requires an examination by a psychiatrist. Defendant misinterprets the statute. It provides alternatives: examination by any appropriate state, county or private institution, psychiatric clinic, mental health center or other psychiatric facility; *or* examination by two qualified physicians. The word "qualified" does not limit those who may examine the defendant to board certified psychiatrists. Nowhere in the statute is there an implication of legislative intent to specify the professional qualifications urged by the defendant.

The trial court attempted to have the defendant evaluated on separate occasions by two Topeka psychiatrists; these attempts

were frustrated by the defendant when he refused to cooperate. The court then sent Levier to the State Security Hospital at Larned, where he remained for approximately 60 days. When the trial court held its hearing to determine competency, it had before it a nine page report from the Forensic Review Board and the staff of the State Security Hospital (these include two physicians, one or more psychologists, and others on the hospital staff), plus the testimony of the defendant, one psychologist, one psychiatric social worker, a psychiatric nurse, and one psychiatrist with over 17 years' experience in the field. The transcript of that hearing extends over almost 100 pages.

The issue before us is whether the trial court's finding of competency amounts to an abuse of discretion. *State v. Gilder,* 223 Kan. 220, 224-5, 574 P.2d 196 (1977). The decision below was supported by an abundance of competent, relevant, substantial evidence. There was no abuse of discretion.

VIII. American Indians on the jury.

Defendant next claims that the trial court erred "in not assuring that there would be native American representation" on the jury array. He asks that we reconsider *State v. Sanders,* 223 Kan. 550, 575 P.2d 533 (1978), where we held that the striking of members of the Negro race from the jury panel by the prosecutor, by way of exercising peremptory challenges, did not deprive the defendant of a fair trial.

Here, there is no showing as to whether or not there were American Indians on the array or on the panel ultimately selected to try the case; and there is no indication that the State struck members of any particular race or class during the exercise of peremptory challenges. Reconsideration of *Sanders* is certainly not required in this case.

The jury trial provision of the Sixth Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, requires that the jury be drawn from a fair cross-section of the community; that it be truly representative of the community. *Duncan v. Louisiana,* 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968); *Smith v. Texas,* 311 U.S. 128, 85 L.Ed. 84, 61 S.Ct. 164 (1940). In *Duren v. Missouri,* 439 U.S. 357, 58 L.Ed.2d 579, 99 S.Ct. 664 (1979), the Supreme Court said:

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive'

group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." (439 U.S. at 364.)

The defendant in this case has not met any of these three criteria. There is no evidence in the record even suggesting that any race or group was systematically excluded. The point is without merit.

IX. Refusing permission to the defendant to act as co-counsel.

Defendant sought permission to act as co-counsel during the jury selection process; the court denied his request. He cites this as error, claiming that this is an absolute right granted by K.S.A. 22-3408(3). That statute, however, is in the alternative; it reads:

"The prosecuting attorney and the defendant *or* his attorney shall conduct the examination of prospective jurors." (Emphasis supplied.)

The statute also grants broad discretion to the trial court to control the jury selection process. In *State v. Ames,* 222 Kan. 88, 563 P.2d 1034 (1977), Chief Justice Fatzer discussed *Faretta v. California,* 422 U.S. 806, 45 L.Ed.2d 562, 95 S.Ct. 2525 (1975), and other federal cases involving the right to *pro se* representation and the right to be represented by counsel. He concluded:

"An indigent accused has a right to either appointed counsel or *pro se* representation, but both rights cannot simultaneously be asserted. . . . A defendant who accepts counsel has no right to conduct his own trial or dictate the procedural course of his representation by counsel. . . .

. . . .

"[Appellant's] right to participate with counsel in the conduct of his defense was still within the sound discretion of the district court." (pp. 100-101.)

The trial court did not abuse its discretion in this case, and no error was committed.

X. Constitutionality of the habitual criminal act.

Finally, defendant directs a barrage at the Kansas habitual criminal act, K.S.A. 21-4504. He contends that it is unconstitutional in that it contravenes the due process clause (5th and 14th Amendments), the double jeopardy clause (5th Amendment), the prohibition against cruel and unusual punishment (8th and 14th Amendments), and the equal protections clause (14th Amendment). We rejected the due process and equal protection challenges to the act in *Churchill v. State,* 216 Kan. 399, 532 P.2d 1070 (1975) and in *State v. Troy,* 215 Kan. 369, 524 P.2d 1121 (1974), relying on *Gladen v. State,* 196 Kan. 586, 413 P.2d 124 (1966).

The cruel and unusual punishment challenge was rejected in *Clinton v. State,* 210 Kan. 327, 502 P.2d 852 (1972). And the double jeopardy claim was rejected in *Fairbanks v. State,* 196 Kan. 650, 413 P.2d 985 (1966).

The claims of error are without substance. The judgment is affirmed.

FROMME, J., not participating.