No. 52,928

STATE OF KANSAS, *Appellee,* v. RICHARD SALEM, *Appellant.*

(634 P.2d 1109)

Opinion filed October 23, 1981.

*Glenn I. Kerbs,* of Patton & Kerbs, of Dodge City, argued the cause and was on the brief for the appellant.

*Curtis E. Campbell,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Richard Salem appeals from guilty verdicts and a judgment of conviction of first degree murder, aggravated burglary, aggravated kidnapping, and kidnapping. The crimes and convictions occurred in Gray County, Kansas. Alan Watson was killed in his own home and his wife Patty Watson was kidnapped and assaulted.

It is apparent from the record that Richard Salem and his accomplice, Rudolph Barron, Jr., committed these senseless crimes in an effort to repay Patty Watson for a beating Salem had received at the hands of Patty's former husband. Neither Salem nor Barron were acquainted with Patty's current husband, Alan Watson.

A brief summary of these occurrences is as follows:

At 4:30 a.m. on August 6, 1980, Patty Watson was wakened by a knock at her door. She went to the door, saw Richard Salem, anticipated trouble, slammed the door in his face and locked it. He immediately proceeded to kick the door in and entered the house. Alan Watson was ordered out of his bedroom at the point of a gun. Barron then entered the home, made a search of the house, and at Salem's instruction cut the drapery cords and tied Alan's hands behind his back. Alan was made to lie on the floor. The telephone wires were cut and at Salem's direction Patty was led outside by Barron. As she was leaving Patty overheard Salem telling Alan to crawl on the floor "like a worm." Alan Watson was discovered sometime later that morning by the sheriff. Alan was in the bedroom lying across the bed in a pool of blood. His hands and feet were tied and he had a bullet hole between his shoulder blades at the base of his neck and another bullet hole just above and to the back of his left ear. He was taken to the hospital but died sometime later.

When Barron led Patty from the house he forced her into the back seat of Salem's car. They waited for some time and when Salem failed to appear Barron drove around outside the Cimarron city limits, then stopped a mile north of the city where he was supposed to meet Salem. Barron then tied Patty up in the car. When Salem did not show up, Barron drove around some more,

assaulted Patty, then drove back to Cimarron and let her out of the car. She ran to a friend's house and called the sheriff.

Barron and Salem eventually got together and drove to Wichita. After they were picked up Barron gave a statement to the police. He stated that on the way to Wichita, Salem admitted shooting Alan Watson twice and Salem said he had killed Watson. Patty recovered from her ordeal and testified at the trial. Salem was tried separately.

The first claim of error is based on the refusal of the court to grant defendant's motion for a change of venue. In support of this motion defendant's counsel attached twenty-four newspaper articles which had appeared in the Cimarron, the Dodge City, and the Wichita papers. These articles appeared from August to the first of November, 1980. The trial was held December 8 through 11, 1980. In addition seven affidavits were filed. These were signed by defendant's attorney and six residents of the Cimarron community. The affiants all concluded that Salem could not receive a fair trial in Gray County because of the publicity which the case had received from the news media.

We have many cases in which the requirements for a change of venue have been discussed; among them are *State v. McLaughlin,* 207 Kan. 594, 597, 485 P.2d 1360 (1971); *State v. Gander,* 220 Kan. 88, Syl. ¶ 6, 551 P.2d 797 (1976); *State v. Sanders,* 223 Kan. 273, 574 P.2d 559 (1977); and *State v. Myrick & Nelms,* 228 Kan. 406, 616 P.2d 1066 (1980). To obtain a change of venue under K.S.A. 22-2616(1) the defendant must satisfy the court that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county.

In our cases it has been held (1) the burden to establish prejudice is on defendant, (2) not only prejudice must be shown but the prejudice must be such as to make it reasonably certain the defendant cannot receive a fair trial, (3) speculation as to possible prejudice is not sufficient, (4) the State is not required to produce evidence to refute affidavits obtained by defendant, (5) the granting of a change of venue lies within the sound discretion of the trial court, and (6) the trial court's ruling thereon will not be disturbed absent a showing of prejudice to the substantial rights of the defendant. See *State v. Sanders,* 223 Kan. at 280.

To establish the existence of prejudice against a defendant

sufficient to justify a change of venue, specific facts and circumstances must be established to indicate it will be practically impossible to obtain an impartial jury to try the case. Such a showing may not be based on speculation. *State v. Myrick & Nelms,* 228 Kan. at 417.

The publicity in this case occurred a month or more before the trial. The charges of first degree murder of the husband and aggravated kidnapping of the wife which were filed against defendant in this rural community were shocking because of their general nature, and they evoked a feeling of outrage because both those accused and the victims were known in the community. However, the articles published were largely factual reports of the action being taken by the law enforcement officers, which information was available to any person who cared to visit the court and inspect the records. The news articles were objective in nature and for the most part merely recited the progress of proceedings in court. The same was true of the articles concerning the preliminary hearing. The preliminary hearing testimony was quoted as coming from a particular witness or witnesses. Other facts were characterized as being alleged and not known by the news media reporters. The nature of the publicity was neither inflammatory nor accusatory. The news releases were of factual happenings and contained no derogatory personal references to the defendant. Conclusions which might be drawn from the reported happenings were left to the judgment of the listener, viewer or reader. The reporting was generally such that we find no evidence of an attempt by the media to influence the outcome of the trial.

The manner of handling challenges for cause during the jury voir dire, and the amount of time required to obtain the proper number of jurors may also be considered in determining the presence of possible prejudice arising from the publicity. The jury voir dire in this case began in court around 9:45 a.m. and was concluded by 3:00 p.m. of that same day. This is not an excessive time for selecting a jury for a murder trial. Twelve jurors and one alternate were selected after each side had exercised the statutory number of peremptory challenges.

We have carefully examined the voir dire proceedings appearing in the record. Each time a prospective juror expressed a concern about his or her open-mindedness or impartiality that

juror was discharged for cause without intensive questioning by counsel and without hesitation on the part of the judge.

Publicity in this case extended over a major portion of the state. There is no reason to believe that a jury from another county in this or any adjacent judicial district would have rendered different verdicts. The evidence was compelling and convincing beyond a reasonable doubt. The appellant has failed to sustain his burden of proof for a change of venue. He has failed to show that such prejudice existed against him in Gray County that a fair trial was denied him.

The defendant Salem next argues that he was prejudiced by failure of the court to appoint an attorney immediately on his arrest. These crimes were committed on August 6, 1980. Salem was arrested on the following day and taken before a judge. On August 7, 1980, the judge found Salem was not indigent and refused to appoint an attorney. He based this finding on an affidavit filed by Richard Salem under K.S.A. 1980 Supp. 22-4504. The affidavit states that defendant owned a house, three cars, stereo equipment, guns, had $500.00 in the bank, and that he was regularly employed and earned $240.00 per week take-home pay. His monthly payments on indebtedness amounted to $505.00 per month. He was married and had an infant daughter. His wife did not work.

K.S.A. 1980 Supp. 22-4504(1) provides:

"(1) When any defendant who is entitled to have the assistance of counsel, under the provisions of K.S.A. 1979 Supp. 22-4503, claims to be financially unable to employ counsel, the judge may, in the judge's discretion, require that the defendant file an affidavit stating (a) the defendant's name, home address, occupation and place of employment; (b) if married, the name, home address, occupation and place of employment of the defendant's spouse; (c) a complete statement of the defendant's assets, liabilities, current income and the persons legally dependent on the defendant for support; (d) a complete statement of all property transferred by the defendant between the date of the alleged offense and the date of such affidavit which shall include: (A) A specific description of such property; (B) the name and address of the person to whom transferred; (C) the date of such transfer; (D) the consideration received by the defendant for such transfer. The judge or magistrate may interrogate the defendant under oath concerning the contents of the affidavit and may direct the county or district attorney, sheriff, marshal or other officer of the county to investigate and report upon the financial condition of the defendant and may also require the production of evidence upon the issue of the defendant's financial inability to employ counsel. Upon the basis of the defendant's affidavit, if required by the court, the defendant's statements under oath, and such other competent evidence as may be brought to the attention

of the judge or magistrate, which shall be made part of the record in the case, the judge or magistrate shall determine whether the defendant is financially unable to employ counsel."

This statute further sets forth the matters which a judge should consider in making a determination as to a claim of indigency as follows:

"In making such determination the judge shall consider the defendant's assets and income; the amount needed for the payment of reasonable and necessary expenses incurred, or which must be incurred to support the defendant and the defendant's immediate family; the anticipated cost of effective representation by employed counsel; and any property which may have been transferred or conveyed by the defendant to any person without adequate monetary consideration after the commission of the alleged crime. *If the defendant's assets and income are not sufficient to cover the anticipated cost of effective representation by employed counsel when the length and complexity of the anticipated proceedings are taken fully into account, the defendant shall be determined indigent in full or in part and the judge shall appoint an attorney as provided in K.S.A. 1979 Supp. 22-4503.* If the judge determines that the defendant is financially able to employ counsel, the judge shall so advise the defendant and shall give the defendant a reasonable opportunity to employ an attorney of the defendant's own choosing." Emphasis supplied.

### K.S.A. 1980 Supp. 22-4504(4) provides:

"(4) The determination that a defendant is indigent *or partially indigent* shall be subject to review at any time by any judge before whom the cause is then pending." Emphasis supplied.

The 1981 Legislature amended the "aid to indigent statutes" (L. 1981, ch. 157); however, there is little or no substantive change in the particular provisions quoted above.

It should be noted the 1981 amendment did repeal previous provisions of the law relating to recoupment of amounts expended in providing counsel for defendants and did adopt new provisions authorizing recoupment in those cases where a defendant is convicted and found to be financially able to pay the amount expended on his behalf.

A person accused of crime has an obligation to hire his own counsel if financially able to do so, and if he fails or refuses to use his own assets and income for such purpose he may be considered to have waived his right to counsel intentionally, provided these circumstances are spread on the record. If a defendant's finances and income are not sufficient to pay for the entire cost of an adequate defense, the court may find him partially indigent and require partial payment or payments from him to be made

toward the cost of a defense before appointing counsel as provided in the aid to indigent defendant statutes, K.S.A. 22-4501 *et seq.,* as amended.

In the present case the record does not disclose the basis, but the judge did appoint an attorney to represent the defendant on the 14th day of August, 1980. This was eight days after the date of the crime and twenty-four days before the preliminary hearing. Defendant does not complain that his appointed attorney had insufficient time to prepare for the preliminary hearing. The record discloses five pretrial motions were filed before the hearing. His complaint was that if an attorney had been appointed seven days earlier the attorney may have been able to prevent his accomplice from confessing and implicating him. This claim is improbable and speculative to say the least. He also argues the failure to have a paraffin test on his hands caused him prejudice, but such failure cannot be chargeable to delay in appointing an attorney. This claim appears to be an afterthought. On the record submitted to this court indigency was not established so as to require the appointment of an attorney during this short period of time.

An additional complaint is made of the refusal to suppress certain exhibits consisting of two photographs, one of a bloodstained pillow, the other of a bloodstained sheet on which the victim was found. The actual pillowcase and sheet were also admitted in evidence and objected to as being of such a gruesome nature as to be prejudicial and inflammatory, thereby outweighing their probative value.

The point is without merit. Exhibits which depict the scene of a crime and which are relevant to matters in issue, such as the cause and manner of death, aid in understanding the testimony and are admissible even though considered gruesome or inflammatory by defendant. *State v. Childers,* 222 Kan. 32, 44, 563 P.2d 999 (1977); *State v. White & Stewart,* 225 Kan. 87, 90, 91, 587 P.2d 1259 (1978); *State v. Foster,* 229 Kan. 362, 367, 623 P.2d 1360 (1981).

The final point raised concerns claimed error in overruling the motion for a new trial and a motion for judgment of acquittal.

This court most recently dealt with the sufficiency of the evidence issue in *State v. Williams,* 229 Kan. 290, 623 P.2d 1334, *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981). This court stated the rules as follows:

"The rules used to determine sufficiency of the evidence are frequently cited. A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt. *State v. Mack,* 228 Kan. 83, 89, 612 P.2d 158 (1980), and cases cited therein. In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Peoples,* 227 Kan. 127, 133, 605 P.2d 135 (1980), and cases cited therein. In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence and if the essential elements of the charge are sustained by any competent evidence the conviction must stand. *State v. Peoples,* 227 Kan. at 133; *State v. Racey,* 225 Kan. 404, 407, 590 P.2d 1064 (1979). A conviction of even the gravest offenses may be sustained by circumstantial evidence. *State v. White & Stewart,* 225 Kan. 87, Syl. ¶ 14, 587 P.2d 1259 (1978)." 229 Kan. at 296.

Clearly there is sufficient evidence for the jury to have found the defendant guilty of the first degree murder of Alan Watson, aggravated burglary, aggravated kidnapping of Alan Watson and participating in the kidnapping of Patty Watson.

The defendant argues that there is insufficient evidence of premeditation to sustain a first degree murder conviction. There was evidence that the defendant and his accomplice had at least three "plans" for the crime. There was evidence that Richard Salem had a grudge against Patty Watson. There was evidence that Richard Salem said on the way to Cimarron that "he was going to do it and he could do it." Finally, there was evidence that the defendant told the victim he was going to shoot him and put him in the doghouse. When Patty Watson left, the victim was bound and was being forced to crawl across the room "like a worm." There was an abundance of evidence of premeditated and deliberate conduct.

The defendant specifically claims a lack of evidence as to the kidnappings. The kidnapping statute, K.S.A. 21-3420, and the aggravated kidnapping statute, K.S.A. 21-3421, reveal that taking *or* confining a person along with other elements of the crimes, not here pertinent, constitute the offenses in question. The testimony of witness Patty Watson and of accomplice Rudy Barron, Jr. clearly establishes that the defendant held both victims at gunpoint, confining them so they could not escape until the crimes

could be committed. The defendant also directed that the victims be bound and told his accomplice where to take the victim, Patty Watson. The defendant himself took Alan Watson back to the bedroom. The testimony provides ample evidence of the confining of both victims.

The judgment is affirmed.