No. 54,896

State of Kansas, *Appellee,* v. Burle Hill, *Appellant.*

(664 P.2d 840)

Opinion filed June 10, 1983.

*Vernon D. Grassie,* of Girard, argued the cause and was on the brief for appellant.

*Frederick R. Smith,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: Burle Hill, defendant and appellant in this action, was convicted by a Crawford County jury of the premeditated first-degree murder of Velma Darlene Collins in violation of K.S.A. 21-3401. He was sentenced to life imprisonment. He appeals and contends that the trial court erred (1) in refusing to grant a change of venue, (2) in refusing to grant a judgment of acquittal and in refusing to reduce the conviction to murder in the second degree, (3) in refusing to grant a new trial, (4) in refusing to suppress certain evidence, (5) in refusing to set aside the verdict because it was based on passion and prejudice, and (6) in sentencing the defendant to life imprisonment.

On March 29, 1982, a local resident was cutting wood near the Lightning Creek bridge west of Pittsburg when he saw a red pickup truck stop on the bridge. He saw the driver get out and go to the rear of the truck, and he observed a mattress in the truck bed. Assuming that the driver was going to dispose of the mattress, he returned to his work. When he next looked up, he saw the man driving away with the mattress still in the back of the truck. This aroused his curiosity and after he loaded his wood he drove onto the bridge to see what the truck driver had thrown out. He observed a body in the creek bed; another passer-by soon confirmed his observations, the authorities were notified, and an investigation commenced. A blood-stained mattress was found a short distance up the road. The body was identified as being that of Mrs. Collins, and evidence began to surface connecting the defendant to the crime.

Mrs. Collins was last seen alive in the company of the defendant. The truck observed on the bridge had several distinguishing characteristics, including the fact that it was being driven with a flat tire. Defendant's truck matched the description. Defendant's house was thoroughly searched and blood stains were found throughout—on kitchen walls, on the paneling, in the master bedroom, on the living room walls, in the hallway near the kitchen, in the garage, and in the truck. An autopsy disclosed that the victim's jaw was broken in two places;

the left half of her lower jaw was completely broken free or severed; there was multiple bruising all over her body.

The defendant admitted being with Mrs. Collins at the time of her death. He testified that she tripped while carrying two cans of beer, and fell against the coffee table in his home. Upon discovering that she was dead, he decided not to call the police because some five years previously he had been charged with the murder of a woman who died under similar circumstances. He had been acquitted, but he thought his previous involvement might be held against him. He admitted that he had retained the body in his home for a couple of days, deliberated how to best dispose of it, and finally threw it into Lightning Creek. There was extensive medical testimony to the effect that the injuries sustained by Mrs. Collins before her death were caused by a great deal of force, not such little force as might be encountered in a common household fall or other accident. One witness likened the force necessary to inflict such injuries to that encountered in automobile accidents. A dentist testified that a blow to the victim's left jaw dislodged a tooth on the right side of her mouth. The pathologist concluded that the severe injury to her jaw resulted in her death because the fracture allowed her tongue to fall back in the throat, obstructing the airway and causing her to suffocate.

The first issue is that of the trial court's refusal to grant a change of venue. Defendant presented some six newspaper accounts of the crime, which for the most part were factually accurate with the exception that it was reported that the woodcutter had seen the body being thrown into the creek. Some of the articles also mentioned the defendant's prior acquittal on unrelated murder charges. Defendant contended that these reports were read by the jurors prior to voir dire, and that he was prejudiced by this publicity. He presented no evidence to support this conclusion. One hundred twenty jurors were summoned, but only 51 were examined, and a panel of 37 jurors was passed for cause. The peremptory challenges were exercised and a jury of twelve, with one alternate, was empaneled before noon on the first day of trial.

In *State v. Salem*, 230 Kan. 341, 634 P.2d 1109 (1981), Justice Fromme summarized the holdings of this court on the question of a change of venue, saying:

"We have many cases in which the requirements for a change of venue have

been discussed; among them are *State v. McLaughlin,* 207 Kan. 594, 597, 485 P.2d 1360 (1971); *State v. Gander,* 220 Kan. 88, Syl. ¶ 6, 551 P.2d 797 (1976); *State v. Sanders,* 223 Kan. 273, 574 P.2d 559 (1977); and *State v. Myrick & Nelms,* 228 Kan. 406, 616 P.2d 1066 (1980). To obtain a change of venue under K.S.A. 22-2616(1) the defendant must satisfy the court that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county.

"In our cases it has been held (1) the burden to establish prejudice is on defendant, (2) not only prejudice must be shown but the prejudice must be such as to make it reasonably certain the defendant cannot receive a fair trial, (3) speculation as to possible prejudice is not sufficient, (4) the State is not required to produce evidence to refute affidavits obtained by defendant, (5) the granting of a change of venue lies within the sound discretion of the trial court, and (6) the trial court's ruling thereon will not be disturbed absent a showing of prejudice to the substantial rights of the defendant. See *State v. Sanders,* 223 Kan. at 280.

"To establish the existence of prejudice against a defendant sufficient to justify a change of venue, specific facts and circumstances must be established to indicate it will be practically impossible to obtain an impartial jury to try the case. Such a showing may not be based on speculation. *State v. Myrick & Nelms,* 228 Kan. at 417." 230 Kan. at 343-44.

Here the defendant did little more than provide copies of factual news reports for the trial court. The one factual item which was erroneous is of little moment, since the defendant admitted throwing the body into the creek. Specific facts and circumstances to establish that it would be practically impossible to obtain an impartial jury were not offered, and trial experience proved the opposite to be true: an impartial jury was readily available and was selected without difficulty. The trial court did not abuse its discretion in refusing to grant a change of venue.

We next turn to defendant's claim that the trial court erred in refusing to grant a judgment of acquittal notwithstanding the verdict, or in refusing to allow a reduction of the verdict from first-degree murder to second-degree murder. The test which trial courts must apply in passing upon a motion for judgment of acquittal is concisely stated by Chief Justice Schroeder in *State v. Mack,* 228 Kan. 83, 612 P.2d 158 (1980):

"A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt. *State v. Tillery,* 227 Kan. 342, 345, 606 P.2d 1031 (1980); *State v. Rodriquez,* 226 Kan. 558, 564, 601 P.2d 686 (1979)." 228 Kan. at 89.

The same rule is stated and applied in *State v. Myrick & Nelms,*

228 Kan. 406, Syl. ¶ 7, 616 P.2d 1066 (1980), and in *State v. Diaz & Altemay*, 232 Kan. 307, Syl. ¶ 1, 654 P.2d 425 (1982). The State's evidence clearly established the cause of death as a severe beating; the extensive and severe injuries sustained by the victim could not have been occasioned by and were inconsistent with a simple and single fall. Witnesses saw the victim shortly before her death; they did not observe any bruises on her body. The evidence also establishes activity by the defendant designed to remove evidence of the victim's death from his home and clothing. Under the standards above noted, the trial court did not err in overruling the motion for judgment of acquittal.

Defendant's contention that the crime cannot be first-degree murder, but only second-degree, is premised upon his contention that no premeditation was established by the evidence. It is not necessary that premeditation be established by direct evidence; it may be established by circumstantial evidence, and may be inferred from the established circumstances of the case provided the inference is reasonable. The jury has a right to make that inference from substantial evidence. See *State v. Buie*, 223 Kan. 594, 597, 575 P.2d 555 (1978), where we discussed a similar issue and the rules applicable thereto, saying:

"Proof of premeditation as an element in first-degree murder was considered by this court in two recent cases. (*State v. Henson*, 221 Kan. 635, 562 P.2d 51 [1977]; *State v. Hamilton*, [216 Kan. 559, 534 P.2d 226 (1975)]). Those two cases hold that the element of premeditation, essential to first-degree murder, is not to be inferred from use of a deadly weapon alone, but if, in addition, other circumstances are shown, such as lack of provocation, the defendant's conduct before and after the killing or the dealing of lethal blows after the deceased was rendered helpless, the evidence may be sufficient to support an inference of deliberation and premeditation. Our problem in this case is to determine whether the evidence in the record before us is sufficient to establish a deliberate and premeditated killing. In a prosecution for murder the law does not presume or imply the existence of premeditation and deliberation from any state of circumstances, but it is not necessary that they be established directly. Premeditation and deliberation may be inferred from the established circumstances of the case, provided the inference is a reasonable one. In such case, the jury has the right to make the inference. (*Craft v. State*, 3 Kan. *450 [1866].)" 223 Kan. at 597.

Also, see *State v. Fenton*, 228 Kan. 658, 666, 620 P.2d 813 (1980), and *State v. Hutton*, 232 Kan. 545, 551-52, 657 P.2d 567 (1983).

The question to be resolved is whether premeditation can reasonably be inferred from the established facts and circum-

stances of the case. No weapon identifiable as the instrument of death was admitted in evidence, and none was found at the defendant's home. The medical evidence, however, indicated that the victim must have been beaten with some blunt instrument; the medical experts did not believe that the victim's injuries could have been caused by a beating with fists alone. The severe injuries to the victim's jaw, head, and all over her body were sustained while she was still alive and were not consistent with a fall. Outside of the defendant's testimony, there is no other evidence indicating that the victim fell against a coffee table. There is no evidence showing that the attack was provoked. There is a strong likelihood that death would follow a beating of such severity, although the assailant may not have planned death by suffocation. Following the victim's death, defendant hid her glasses, her watch, and one of her shoes. He hid the body, and testified that he contemplated dismembering the body so that he could dispose of it in a foot locker. He dropped the body from his attic to the concrete garage floor; he hauled the body some ten miles away and disposed of it in the creek bed. He burned the clothing he was wearing and attempted to clean up the bloodstains throughout his home. Nevertheless, blood was found throughout the house and not only in those portions of the house where the defendant testified the victim had been. There is nothing in the evidence to suggest that anyone other than the defendant was present throughout the victim's ordeal. Under the circumstances disclosed by the record, we conclude that the jury could reasonably have concluded that the killing was premeditated.

We turn next to the new trial issue. Defendant states two grounds upon which he maintains that the trial court should have granted him a new trial: First, he contends that the verdict was given under passion and prejudice and second, he argues that the verdict is contrary to the evidence. The first is a restatement and reargument of his claim that the trial court erred in refusing to grant a change of venue, and the second is simply a restatement and reargument that the evidence is insufficient to support a finding of premeditation and deliberation. Neither reargument is persuasive and we will not devote further attention to them.

His claim of error relating to the refusal of the trial court to suppress evidence seized during the search of the defendant's

residence is based upon the fact that there is a misstatement of fact in the application for search warrant. The statement is the same as that repeated in the news stories—that a witness observed a white male throwing a blanket-clad body over a bridge. The State concedes that this is not true.

The general rule as to the validity of an affidavit for a search warrant is stated in *State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978):

"However, there is a presumption of validity with respect to an affidavit supporting a search warrant and generally a party against whom a search warrant is directed may not dispute the matters alleged in the supporting affidavit or application. *Franks v. Delaware*, 438 U.S. at 171.

"An exception to the above general rule is recognized if the challenger's attack is supported by allegations and an offer of proof under oath that the affidavit or application for search warrant contains material statements of deliberate falsehood or of reckless disregard for the truth. Under this exception an evidentiary hearing would be required on a motion to suppress evidence obtained in the search. The challenger has a duty to point out specifically the portion of the warrant affidavit that is claimed to be false, and a statement of supporting reasons should accompany the motion to suppress." 225 Kan. at 43-44.

Here, the defendant was afforded an evidentiary hearing outside the hearing of the jury, and the single erroneous statement noted above was the only misstatement of fact that the defendant was able to demonstrate. In *State v. Towles & Brewer*, 4 Kan. App. 2d 567, 609 P.2d 228 (1980), the Court of Appeals discussed a similar claim of error and said:

"The issue as presented is integrally related to the United States Supreme Court's decision announced in *Franks v. Delaware*, 438 U.S. 154, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978). The holding in *Franks* may be summarized as follows: '[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, *and if the allegedly false statement is necessary to the finding of probable cause,* the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, *the affidavit's remaining content is insufficient to establish probable cause,* the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.' 438 U.S. at 155-156. (Emphasis added.)" 4 Kan. App. 2d at 569.

We must then examine the remaining portions of the affidavit. These tie the blanket and the mattress found at or near the scene with the defendant; they tie the defendant's truck with the one

seen at the bridge shortly before the body was discovered; and they tie the defendant and the defendant's home to the victim, showing that shortly before her death she was at defendant's residence, wearing the same clothing she was wearing when her body was found. Numerous recitals in the affidavit tie the defendant to the crime; the remainder of the affidavit, with the erroneous statement deleted, is fully sufficient to provide probable cause for the issuance of a search warrant. The trial court did not err in refusing to suppress the evidence obtained in the search pursuant to the warrant.

Defendant's final claim of error is that the sentence of life imprisonment is excessive, and that the court should have reduced the conviction to one for second-degree murder wherein the minimum sentence is five years' imprisonment. We have already dealt with the latter contention and have determined that, upon the evidence adduced, the defendant was properly convicted of murder in the first degree. The life sentence imposed by the trial court is that prescribed for the offense of first-degree murder, and the trial court, upon the defendant's conviction, had no discretion to impose a lesser sentence.

The judgment is affirmed.