No. 43,182

State of Kansas, *Appellee,* v. Donald D. Johnson, *Appellant.*

(378 P. 2d 167)

Opinion filed January 26, 1963.

*Paul B. Watson,* of Jetmore, argued the cause and was on the briefs for the appellant.

*Bradley Post,* of Meade, argued the cause, and *William M. Ferguson,* attorney general, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Jackson, J.: The appellant in this appeal was convicted of driving on Highway No. 54 while in an intoxicated condition, and appeals urging error.

At the outset, the appellee asserts that no service of abstract or brief has been made upon the attorney general as provided in all state cases under rule 9, of this court. Evidently the papers were served upon the county attorney. Appellee fails to cite any case in which failure to serve the attorney general has been considered fatal to a criminal appeal in which service had been made upon the county attorney. We would not say that such a failure might not be considered fatal. However, we shall overlook it at this time.

In the early morning hours, the appellant, referred to hereinafter as the defendant, was driving through the town of Plains in Meade county. A witness observed that defendant's truck weaved from side to side and called the city marshal. The two pursued defendant and stopped him. The marshal considered the defendant intoxicated and took him to the county jail in Meade.

At the jail defendant was given at least three tests for sobriety before four witnesses. He was said at the trial to have been unable to perform satisfactorily the heel-to-toe test, the coin test and the finger-to-nose test.

At the time the city marshal stopped the defendant, he asked him what he had been drinking, and he replied, "Whiskey." There was also testimony by the marshal and other witnesses that defendant was red in the face and that his voice was slurred and unnatural at the time of the arrest.

There can be no doubt that ample evidence was introduced to convict the defendant of the crime charged. The only question in this case depends upon the fact that it seems defendant took a blood test. The matter was brought to the attention of the court and jury during the testimony of Sheriff Johnston as follows:

"A. After they were performed I *taken* him then to the hospital and gave him a blood test.

"Q. What was done at that time?

"A. A blood test was taken from Mr. Johnson, and it was sent in to the State Board of Health Laboratories.

"Q. Did you receive any report on it?

"A. Yes, sir.

"Q. What was that report?

"Mr. Watson: I object to this Your Honor. No proper foundation has been laid for him to testify to the results of a blood test.

"The Court: He may not testify to the results of a blood test from this defendant.

"Q. I would like to hand you this small piece of paper and ask you, Sheriff Johnston, what that is?

"A. This is a report showing that he was intoxicated.

"Mr. Watson: Your Honor, I object to this. There is no proper foundation for this testimony to go in at all. It is highly prejudicial.

"The Court: Objection sustained.

"Mr. Post: If it please the Court and counsel for the defense, I have a sworn affidavit from the Kansas State Board of Health—(Tr. 53)

"Mr. Watson: The defense will not stipulate to the admission of an affidavit in evidence.

"Mr. Post: It was impossible for this gentleman to be here to testify, and we would like for you to examine that and see whether or not you would be willing to—

"Mr. Watson: I'll not stipulate to the admission of this test without the laboratory technician who conducted the test being present for cross-examination.

"Mr. Post: We will withdraw the offer of this affidavit.

"Mr. Watson: And Your Honor, I request that the sheriff's answer about this particular document be stricken from the record.

"THE COURT: It will be stricken from the record, and the jury is instructed to disregard the testimony of this witness concerning this report. (Tr. 54)"

It was most unfortunate that the county attorney asked the question as he did, immediately after the court had advised that the sheriff would not be allowed to testify to the blood test. We do not say that he did it intentionally but we do feel that the county attorney should have been more cautious.

Upon the completion of the sheriff's testimony, a recess was taken and defendant asked for a mistrial because of the testimony of the sheriff as to the blood test.

The trial court refused the motion for a mistrial and the motion for a new trial after the verdict of conviction, but did instruct the jury, as shown below, that they should not consider any testimony which had been excluded.

In the counter abstract, it is shown that the trial court gave instruction No. 10, which reads as follows:

"You are instructed that in arriving at a verdict in this case you are to be governed by the evidence that is permitted to go to the jury, and you are to disregard any questions that may have been asked by counsel to which the court has sustained an objection, and you are to disregard and put from your minds any statements of counsel which are not based upon the evidence in this case or which are not a reasonable and fair deduction from the evidence in the case and the law as given you by the court."

The county attorney claims in his brief that he was surprised when the sheriff answered as he did; that what he had handed the sheriff was a resumé of his own tests to which there was attached a copy of the blood test. Of course, the sheriff did not in fact state that he was referring to the blood test in his answer, but it certainly gave that connotation.

It has long been the rule that erroneous evidence is subject to being stricken by the trial court, hence, it will be presumed that the jury followed the instructions of the court to disregard evidence excluded. It will also be noted that, as shown above, ample evidence was introduced to show defendant to be guilty and it will be presumed the jury based its verdict on that evidence rather than upon the excluded testimony.

Counsel for defendant makes a strong argument that the excluded testimony could not be forgotten by the jury and that the mistrial should have been granted and that now he should have a new trial.

In *State v. Williams,* 126 Kan. 375, 267 Pac. 1095, the county attorney had been allowed to refer to a purported confession in the opening statement and during the trial some testimony was introduced concerning such confession but all reference to it was later stricken by the court and the jury instructed to disregard the reference to it. After conviction upon other ample evidence, the defendant's argument that he was entitled to a new trial was denied. The court cites many of our prior cases to the same effect. The syllabus in *State v. Williams,* supra, reads as follows:

"Where the court promptly withdraws from the consideration of the jury references made by the county attorney in his opening statement to a confession by the defendant and all the evidence of the same improperly admitted, and cautions the jury to disregard the same, the error in making such statement and introducing such evidence is ordinarily cured, and, unless the substantial rights of the defendant are shown to have been affected thereby, it will be so held on appeal, under the liberal rule for review prescribed in R. S. 62-1718."

Attention may also be directed to *City of Wichita v. Hibbs,* 158 Kan. 185, pp. 188-189, 146 P. 2d 397; and *State v. Beam,* 175 Kan. 814, p. 817, 267 P. 2d 509.

It will be noted that G. S. 1949, 62-1718 is still in force, and that under our decisions it will be presumed that the jury followed the directions and instructions of the trial judge and disregarded erroneous testimony which had gotten into the case but which was promptly stricken by the judge.

The judgment below is affirmed and it is so ordered.

PRICE, ROBB and SCHROEDER, JJ., dissent.