No. 48,086

STATE OF KANSAS, *Appellee*, v. THOMAS ORIVE LAUBACH, *Appellant*.

(556 P. 2d 405)

Opinion filed November 6, 1976.

*Robert C. Littrell,* of Manhattan, argued the cause and was on the brief for the appellant.

*Paul E. Miller,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Dennis C. Sauter,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Thomas Orive Laubach was convicted of aggravated robbery and has appealed.

Shortly after three in the morning of February 25, 1974, Henry Quick, the 85-year-old night clerk at the Wareham Hotel in Manhattan, was approached by a man requesting change for a quarter. When Quick opened the cash drawer he was struck in the head with a desk name plaque. The assailant then leaped over the counter

and began choking Quick who, after scratching his assailant on the neck, feigned unconsciousness. The thief turned his attention to the cash drawer and fled with approximately $100 in ones and fives.

A description of the robber was sent out to various motels and at approximately 6:15 a. m., about three hours after the attack, a suspect (appellant Laubach) was located at the Ramada Inn, where he had just asked for a room. The investigating officers noticed a scratch on the suspect's neck; when asked if he had money for a room, he produced a roll of bills. He was placed under arrest and his money—fifty-four ones and eight fives—was seized. Quick identified him at trial, and a jury convicted him.

Three errors are alleged. Appellant first alleges that the complaint should have been dismissed since he was held for a unreasonable time without a first appearance before a magistrate.

Laubach was initially arrested on February 25, 1974. While they do not appear in the record, apparently charges of aggravated robbery and felony theft were filed. He was taken before a magistrate and bond was fixed, which defendant was unable to post. A succession of three retained defense attorneys participated in plea negotiations over a period of several months, resulting in dismissal of the felony theft charge and reduction of the aggravated robbery charge to simple robbery. The defendant then waived a preliminary hearing, bond was fixed for his appearance in district court, and an information charging simple robbery was filed.

On June 4, 1974, the defendant apparently changed his mind and refused to enter a plea. That Friday the county attorney filed a new complaint in county court charging aggravated robbery; the following Monday, June 7, the information charging simple robbery was dismissed.

The June 4th complaint and subsequent information form the basis for the conviction now appealed. Because of the county judge's temporary absence from the city, and to save defense counsel a separate trip from Topeka, the attorneys agreed to put off the first appearance on the new charge until June 18, the day set for the preliminary hearing. When the parties appeared at that time the county judge remarked on the lack of first appearance, and the defendant for the first time objected that his right to bail had been infringed. By agreement the court proceeded with the preliminary hearing before dealing with the bond issue. Defendant was bound over, and bond set for his appearance in district court. We are not told whether defendant was able to post the bond set.

Appellant's complaint does not go to the four-month period from February 25 to June 4, during which he was unable to make the bond set on the first charge. He complains only of the two-week period from June 4, when the new charge was filed, to June 18, when his preliminary hearing was held. During the latter period there was no bond set. Of course, undue delay in bringing an accused before a magistrate is not to be condoned, but this court has consistently held:

"Undue delay in bringing one accused of crime before a magistrate is not, of itself, a denial of due process. It is only where a preliminary delay in some way deprives an accused of a fair trial that there can be a denial of due process." (*Cooper v. State,* 196 Kan. 421, 411 P. 2d 652, Syl. 1.)

*Cooper* has been followed in *State v. Dobney,* 199 Kan. 449, 429 P. 2d 928; *State v. Nading,* 214 Kan. 249, 519 P. 2d 714; *State v. Giddings,* 216 Kan. 14, 531 P. 2d 445. We are urged to overrule this line of cases; we decline to do so.

Appellant alleges no prejudice caused by the delay. No incriminating statements were taken, for example. See, *State v. Nading,* supra. From the time of his first arrest and throughout the period he complains of he had counsel of his own choosing. While not determinative we note that he had been unable to post bond from February 25 until June 4. It is difficult to imagine that he would have fared any better during the last two weeks had there been a bond order in effect. We find no denial of due process necessitating dismissal.

Appellant next asserts that he should have been allowed to accompany, or at least consent to, a view by the jury of the hotel lobby. K. S. A. 22-3418 provides that when the jurors view a place where some fact occurred they "may be accompanied by the defendant, his counsel and the prosecuting attorney." Neither the defense nor the prosecution was consulted before the court ordered the view. Under the statute whether a view will be had and whether the parties shall accompany the jury are both questions entrusted to the discretion of the trial court. No prejudice is alleged or appears from either the fact of the view or the fact that defendant did not accompany the jury. *State v. Zakoura,* 145 Kan. 804, 68 P. 2d 11. Further, no objection was made, either during the trial or in defendant's motion for a new trial. Questions not presented to and determined by the trial court will not be considered on appeal. *In re Johnson,* 210 Kan. 828, 504 P. 2d 217.

Finally, appellant alleges error in the admission of testimony of

Officer William Helfferich which is alleged to be hearsay. The officer testified that he examined the scene of the crime but did not talk with the night clerk, Mr. Quick. He then testified:

"Q Did you receive any information about a possible name or any further information about the description?

"A Later on Officer Roy Kidd had gone to the Red Onion and received some information.

"Mr. Hill [defense counsel]: We object to what Officer Kidd may have said.

"The Court: He hasn't said anything yet. He said what he did. Go ahead.

"A He contacted back down to the hotel stating that a suspect—a subject there had let a suspect off at the Wareham Hotel.

"Mr. Hill: I object to this—

"The Court: He is stating a chain of circumstances and it doesn't pertain to the guilt or innocence of the defendant. It shows what the officer did in this investigation. I think it comes under an exception to the hearsay rule. Go ahead.

"A At this time he stated one of the employees there had dropped a white male off, approximately six foot tall, 200 hundred pounds, had obtained a ride from the Red Onion and was dropped off at the Wareham Hotel. He indicated— the only thing that he could tell me in the way of a name was a Tom, the first name only. Shortly after this Mr. Wilkinson stated that he did not know whether it would be important or not but he had a guest card he would like to show me of a subject that might fit the description and the card—the guest card showed the name of Tom Foote."

The description was then circulated about town, resulting in a call from the manager of the Ramada Inn which led to defendant's arrest.

It is argued that this was double hearsay (Red Onion employee to Officer Kidd to Officer Helfferich) which placed the defendant at the scene of the crime without allowing him to confront the absent witness. We disagree.

Hearsay is defined as "a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated." (K. S. A. 60-460.) The trial court, in considering defendant's new trial motion, found the testimony in question to have been introduced *not* to prove that the defendant was at the scene but that it "tended more to show what he [Officer Helfferich] did and what happened and why he came to the hotel where he checked the register and saw the name of Tom Foote, which the evidence later developed that Tom Foote was the man who was identified by Mr. Quick as the defendant here, Thomas Laubach." We agree. The statement did not place the defendant at the scene of the crime, but rather an unidentified man, whose description was then used in the investigation of the crime.

In *State v. Trotter*, 203 Kan. 31, 453 P. 2d 93, this court upheld the admission of a dispatcher's report:

"The trial court also properly admitted the testimony of Officer LaMunyon in regard to a conversation which he overheard between the police dispatcher and a detective immediately prior to the defendant's apprehension. The testimony was not inadmissible as hearsay evidence for the reason it was not offered to prove the truth of the matter asserted. At most, the evidence provided some explanation of the officer's action in proceeding to the location where defendant was subsequently taken into custody. (See, *State v. Rhoten*, 174 Kan. 394, 257 P. 2d 141, and *Mills v. Riggle*, 83 Kan. 703, 112 Pac. 617.)" (pp. 36-37.)

Similar statements of dispatchers or informants, offered only to explain the course of action of an investigating officer, were held admissible as nonhearsay in *State v. Crowley*, 220 Kan. 532, 552 P. 2d 971; *State v. Ritson*, 215 Kan. 742, 529 P. 2d 90; and *State v. Hollaway*, 214 Kan. 636, 522 P. 2d 364. The information conveyed to Officer Helfferich was not significantly different from the statements considered in those cases.

The state argues that even if the testimony were hearsay it would not be prejudicial error in view of the other evidence of guilt. It points to Quick's identification of the defendant, the scratch on defendant's neck, his possession of bills matching those taken just a few hours before, and direct testimony that defendant had left a Manhattan pool hall just a few minutes before the 3:00 a. m. robbery. While we would agree with the state on this argument, we need not consider the question of prejudice in view of our finding that the officer's testimony was not hearsay.

The judgment of conviction is affirmed.

APPROVED BY THE COURT.