No. 81,644

S<span>TATE</span> OF K<span>ANSAS</span>, *Appellee*, v. C<span>HESTER</span> R. J<span>AMISON</span>, *Appellant*.

(7 P.3d 1204)

Opinion filed July 14, 2000.

*Janine Cox,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Debra S. Peterson,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Chester R. Jamison was convicted on two counts of first-degree premeditated murder in the shooting deaths of Kevin R. Nelson and James E. Berry. He was sentenced to two consecutive hard 40 sentences. He appeals, contending that his convictions must be reversed because of the erroneous admission of evidence and the lack of sufficient evidence to support his convictions. He also claims the court improperly imposed the consecutive sentences. We affirm.

In the early morning hours of October 6, 1997, police responded to reports of a shooting in the parking lot of the Elks Club in Wichita. They discovered brothers Kevin R. Nelson and James E. Berry lying on the ground in the parking lot. Nelson had been shot seven times; Berry had been shot three times. Nelson was pronounced dead at the scene and Berry died later from his wounds.

At trial, Regina Beard, the fiancee of Nelson and the mother of his child, testified that Nelson, Berry, and two others went to the Elks Club on the evening of October 5. They drank, conversed, and danced throughout the evening. At closing time, Nelson told Beard that he was going to drop his companions off at their residences and would then come home. Soon after, Beard heard loud arguing coming from the doorway. She ran to the front door to see what was occurring and saw Nelson lying on the ground with a man she identified as Darnell Guiden standing over him. Unable to get through the crowd in the doorway, she ran to the back door but dropped to the floor on the way when she heard gunshots. She

eventually discovered Nelson lying on the ground in the parking lot.

At the police station, Beard identified Guiden as the shooter. She did so because she had seen him standing over Nelson prior to the shooting; however, she did not see the shooting itself.

Guiden confirmed that he had pushed Nelson out the front door of the club. Guiden stated that he used to manage the club and still helped out on occasion. According to Guiden, there was already some fighting in progress in the parking lot when he pushed Nelson out. Guiden stated that he and Marcus Wright went inside to see if the police had been called. When they went back outside they heard gunshots and saw people running, so they left. Wright also testified that there was fighting outside and that he, Guiden, and Jermaine Oliver were simply standing and talking when they heard gunshots.

Darwin Hankins was in the crowd that night and testified that during the disturbance, Guiden did push Nelson out of the club. Jermaine Oliver asked Guiden if there was a problem and began hitting Nelson. Oliver was joined by Dennis McGaugh and the defendant in battering Nelson. Nelson then ran, pursued by Oliver, McGaugh, and the defendant, among others.

Hankins testified that he then heard gunshots and saw the defendant shooting Nelson at point blank range. Berry then came running up to Nelson as Nelson lay on the ground. According to Hankins, the defendant turned and shot Berry. The defendant and his friends, including Guiden, then left in a car.

Denise Gillon also testified that she was among the crowd at the doorway of the Elks that night. She saw Oliver with another person in a headlock. Oliver was punching that person. Oliver then let the person go but ran after him while continuing to hit him. According to Gillon, the person ran, and others in the crowd chased him, including Dennis McGaugh. She then heard a gunshot and everyone scattered. She dropped to the ground and saw the defendant with a gun in his hand. She saw the muzzle flash as the defendant fired the gun.

Detective Kelly Otis of the Wichita Police Department testified that Gillon had called her to give her information about the shoot-

ing. According to Otis, Gillon identified the person doing the shooting as a member of the Bloods gang. Gillon also told Otis that once the person was through shooting, he stood over the victims as if he wanted to watch them die.

Over objection, the State introduced the expert testimony of Officer Lance Darling of the Gang Intelligence Unit. Darling testified that the Gang Intelligence Unit had identified the defendant and also McGaugh and Oliver as gang members. According to Darling, when one gang member is in a fight, the others will attempt to get involved to protect the gang member.

Law enforcement officials also received an anonymous tip that the defendant was the shooter. They were unable to locate the defendant but received other tips that the defendant was trying to leave town. At the time of his eventual apprehension at a bus stop in Lawrence, the defendant was carrying recently purchased clothing, a prepaid calling card, photographs, $575 in cash, and his birth certificate. He had purchased a ticket to Champaign, Illinois, under the name of Eric Johnson. Eddie Robinson, a friend of the defendant, admitted that he drove the defendant to El Dorado in search of a bus stop but was unsuccessful. He later drove the defendant to Towanda to catch the bus. Robinson maintained that the defendant was going to Illinois to visit Robinson's brother.

The defendant's roommate gave police permission to search the defendant's residence and showed the officers two guns, one of which was identified as belonging to the defendant. Tests on cartridge casings and bullet fragments found in the Elks Club parking lot under Nelson's body, and in the bodies of the victims, revealed that the bullets had been fired from the gun identified as the defendant's.

The defendant was convicted of two counts of premeditated first-degree murder. The State requested that the defendant be given the hard 40 sentence based on the aggravating factor that he purposely killed more than one person. The defendant offered, as a mitigating factor, his lack of significant criminal history. The trial court weighed the factors and imposed the hard 40 sentence for each count, to run consecutively.

On appeal, the defendant argues that evidence of gang involvement, flight after the shootings, and anonymous tips were erroneously admitted at trial. He also claims that the trial evidence was insufficient to prove that he shot the victims and that the shooting was a premeditated act. Finally, the defendant argues that the trial court failed to properly weigh the aggravating and mitigating factors in imposing the hard 40 sentences and further erred in running those sentences consecutively.

## Evidence of Gang Involvement

The defendant's claim of error is based upon the trial court's use of K.S.A. 60-455, relating to the admission of crimes or civil wrongs in admitting the defendant's gang involvement on the issues of motive and identity. The defendant argues that evidence of gang involvement was improper under K.S.A. 60-455 and, in the alternative, that a limiting instruction upon admission was required under K.S.A. 60-455.

This court has consistently held that evidence of gang membership is not evidence of a crime or civil wrong under K.S.A. 60-455. See *State v. Sims*, 262 Kan. 165, 169-70, 936 P.2d 779 (1997); *State v. Cox*, 258 Kan. 557, 566, 908 P.2d 603 (1995); *State v. Bailey*, 251 Kan. 156, 166, 834 P.2d 342 (1992). Therefore, K.S.A. 60-455 does not apply and no limiting instruction is required.

In Kansas, the evidence of gang membership is admissible if relevant. See *State v. Cox*, 258 Kan. 557, Syl. ¶ 1. Evidence of gang affiliation in this case was relevant to establish a motive for the shooting, as well as to identify the defendant as the shooter. Therefore, the trial court did not err in admitting the evidence and the defendant's argument fails.

## Evidence of Flight

Our standard of review regarding admission of evidence at trial is abuse of discretion. Judicial discretion is abused when the court's action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the court abused its discretion. *State v. Gardner*, 264 Kan. 95, 103-04, 955 P.2d 1199 (1998).

Evidence of flight may be admissible to establish the consciousness of guilt, the commission of the acts charged, and the intent and purpose for which those acts were committed. *State v. Walker*, 226 Kan. 20, Syl. ¶ 1, 2, 595 P.2d 1098 (1979). Even where other evidence may weaken this inference of guilt, the objection to such evidence goes to the weight rather than the admissibility. *State v. Webber*, 260 Kan. 263, 274, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997).

Within days of the shooting, the defendant boarded a bus bound for Illinois under an assumed name, taking with him newly purchased clothing, a large amount of cash, and his birth certificate. Under the circumstances, the trial court did not abuse its discretion in admitting the evidence.

**Anonymous Tips**

Prior to trial, the defendant filed a motion to exclude evidence produced by confidential informants. However, the trial court was advised by the parties that an agreement had been reached whereby any information from confidential informants would not be used to assert the truth of any matter but rather would be used to explain why law enforcement took certain actions. Thus, the court took no action on the defendant's motion to exclude.

During the trial, witnesses testifying about information received from anonymous tips related the entire substance of the telephone call, including identity evidence. The defendant brought this to the court's attention and the court instructed the State to refrain from asking about the substance of the tip but rather only to ask officers what they did in response to the tips they received.

In this appeal, the defendant characterizes the trial court's action as "closing the barn door after the horse has escaped." He argues that evidence identifying him as the shooter was inadmissible hearsay, was prejudicial, and requires reversal of his convictions.

While the defendant claims that several statements tending to identify him as the shooter should have been excluded, he points to only one instance where his objection was overruled by the court. All other claims have not been preserved for review. " 'A party must make a timely and specific objection to the admission

of evidence at trial in order to preserve the issue for appeal.' " *State v. Sims*, 265 Kan. 166, 174, 960 P.2d 1271 (1998).

Over the defendant's objection, the State was allowed to relate the following information received from an anonymous caller:

"The caller said that the shooter, E-Bud, had dark skin and walks with a limp. Stated that he had been shot not long ago. And that E-Bud was planning on going to L.A. and was going to be leaving Wichita by bus, possibly a Greyhound, on the 9th."

The substance of the information identified the shooter as E-Bud, the gang name of the defendant. The substance of an anonymous phone call received by a police officer advising that a crime under investigation was committed by a certain person is inadmissible hearsay when it tends to identify the accused and establish his or her guilt. *State v. Thompson*, 221 Kan. 176, 179, 558 P.2d 93 (1976). Therefore, the substance of the instant telephone call was inadmissible hearsay and should not have been allowed into evidence.

However, while the admission of the statement was improper, error in the admission or exclusion of evidence by the court is not grounds for granting a new trial or setting aside a verdict unless refusal to take such an action appears to the court to be inconsistent with substantial justice. *State v. Sanders*, 258 Kan. 409, 418, 904 P.2d 951 (1995). In that case, we stated:

"Error in the admission or exclusion of evidence in violation of a constitutional or statutory right of a party is governed by the federal constitutional error rule. An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that the error is harmless. Before an appellate court may declare such an error harmless, the court must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. Where the evidence of guilt is of such direct and overwhelming nature that it can be said that evidence erroneously admitted or excluded in violation of a constitutional or statutory right could not have affected the result of the trial, such admission or exclusion is harmless [Citation omitted.]." 258 Kan. at 418-19.

The main thrust of the evidence in question was to show that the defendant was planning on leaving town. However, the statement did identify the defendant as the shooter as well. Although

identity was a critical issue, it is doubtful that this statement, standing alone, had any effect on the jury's decision. The caller did not give any reason for her knowledge or any other indication which would give her assertion much weight with the jury. Thus, in the present case, we hold that the admission of the isolated statement was harmless beyond a reasonable doubt.

## Sufficiency of Evidence

### (1) Evidence identifying the defendant as the shooter.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson,* 266 Kan. 322, 326, 970 P.2d 990 (1998).

Two witnesses identified the defendant as the shooter. Forensic evidence established that the bullets that killed the victims were shot from a gun identified as belonging to the defendant. The defendant was apprehended while journeying out of the State in a manner which suggested that he was attempting to flee. There was evidence of gang involvement providing motive evidence as well as identity evidence. We conclude that a rational factfinder could have found beyond a reasonable doubt that the defendant was the shooter.

### (2) Evidence establishing premeditation.

The defendant argues that even if this court would conclude that evidence established intent, there was no evidence of premeditation, an essential element of first-degree murder.

Premeditation is a " 'state of mind' relating to a person's reasons and motives for acting as he or she did." *State v. Cravatt,* 267 Kan. 314, 328, 979 P.2d 679 (1999). Unless a person actually communicates his or her reasons for taking another's life, evidence of premeditation must be proved by circumstantial evidence. Such evidence, however, is sufficient to establish even the gravest offenses as in this case. Premeditation cannot be inferred from the use of a deadly weapon alone, but it may be inferred where other circum-

stances also exist. *State v. Cravatt*, 267 Kan. at 328-29; *State v. Hill*, 233 Kan. 648, 652, 664 P.2d 840 (1983).

The circumstances which may give rise to an inference of premeditation include but are not limited to (1) the nature of the weapon used, (2) a lack of provocation, (3) the defendant's conduct before and after the killing, (4) threats and/or declarations made by the defendant before and after the killing, and (5) lethal blows inflicted after the deceased was felled and rendered helpless. *State v. White*, 263 Kan. 283, 294, 950 P.2d 1316 (1997); *State v. Henson*, 221 Kan. 635, 639, 562 P.2d 51 (1977).

Several of the circumstances outlined in *Henson* and *White* are present in this case. The defendant and several others had been in an altercation with the victims and had pursued them prior to and at the time of the shooting. According to James Kirkendall, many of the shots were fired at Nelson as he lay on the ground. Also, Berry was going to Nelson's aid when the defendant shot him. The defendant also stood over the victims as if "he wanted to watch them die." A consideration of this evidence in a light most favorable to the State is, we believe, sufficient to support the conclusion that a rational factfinder could have found the defendant guilty of first-degree premeditated murder beyond a reasonable doubt.

The jury was instructed in accordance with PIK Crim. 3d 56.04(b) that " 'premeditation means to have thought over the matter beforehand.' " The jury was also instructed that " '[p]remeditation' does not require a specific time frame." The defendant claims that this instruction, together with the final argument of the prosecutor that premeditation can occur in an instant, confused the jury regarding the law and rendered its verdict without evidentiary support. In *State v. Moncla*, 262 Kan. 58, 72, 936 P.2d 727 (1997), we held that the statement by the trial court that premeditation means to have thought over the matter beforehand, and there is no particular time element required to establish premeditation, was a correct statement of Kansas law. However, we expressed concern and rejected the trial court's addition of the phrase "it may arise in an instant" to the standard PIK instruction on premeditation. We felt that the addition of such a phrase would tend to diminish the element of premeditation beyond the clear definition provided under Kansas law. 262 Kan.

at 72. However, we found the trial court's addition of the phrase not to be reversible error.

We note that the defendant did not object to the prosecutor's final argument. There is also a very real distinction between the argument of a prosecutor and the instruction of a trial court. The jury is and was instructed that statements and arguments of counsel are not evidence. The jury was also advised of the definition it must apply in deciding whether there had been premeditation.

This court has consistently approved the definition of "premeditation" set forth in PIK Crim. 3d 56.04(b) as a correct statement of Kansas law. However, as the defendant points out, this view is no longer unanimous. In *State v. Saleem*, 267 Kan. 100, 115, 977 P.2d 921 (1999), in a concurring opinion, Justice Allegrucci expressed his disagreement with PIK Crim. 3d 56.04(b) and this court's statement that the definition of premeditation is simply "to have thought over the matter beforehand." He noted the dilemma which this definition caused with regard to the distinction between premeditated, intentional first-degree murder, and intentional second-degree murder. 267 Kan. at 115.

Consistent with our past decisions, we conclude that the definition of "premeditation" in PIK Crim. 3d 56.04(b) adequately conveys the concept that "premeditation" means something more than the instantaneous, intentional act of taking another's life. To have thought the matter over beforehand means to form a design or intent to kill before the act. See *State v. McGaffin*, 36 Kan. 315, 319, 13 Pac. 560 (1887). In this case, the evidence, considered in the light most favorable to the State, convinces us that a rational factfinder could have found that the act of the defendant was an act which he thought over beforehand, in the sense that he planned and contrived to kill both victims.

## The Weighing of Aggravating and Mitigating Factors

The defendant argues that the trial court failed to properly weigh the aggravating and mitigating circumstances in imposing the hard 40 sentence in this case. He contends that the trial court did not properly weigh his young age and lack of significant criminal history

against the sole aggravating factor that he caused the death of more than one person.

K.S.A. 21-4638 authorizes a hard 40 sentence. Under a hard 40 sentence, a defendant is sentenced to life in prison and is not eligible for parole for 40 years. If a defendant is convicted of first-degree murder based upon the finding of premeditated murder, the court then determines whether the defendant shall receive the hard 40 sentence. K.S.A. 21-4635(a). This determination is made as follows:

"If the court finds that one or more of the aggravating circumstances enumerated in K.S.A 21-4636 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4638 [the hard 40 sentence] and amendments thereto; otherwise, the defendant shall be sentenced as provided by law." K.S.A. 21-4635(c).

The aggravating circumstances are found in K.S.A. 21-4636, which provides in pertinent part:

"Aggravating circumstances shall be limited to the following:
. . . .
(b) The defendant knowingly or purposely killed or created a great risk of death to more than one person."

The mitigating circumstances are found in K.S.A. 21-4637, which states in pertinent part:

"Mitigating circumstances shall include, but are not limited to, the following:
(a) The defendant has no significant history of prior criminal activity."

The trial court in this case found the aggravating circumstance that the defendant knowingly or purposely killed more than one person applied to both of the defendant's first-degree murder convictions, and that the mitigating circumstance—that the defendant had no significant criminal history—did not outweigh the aggravating circumstances. Thus, a hard 40 sentence was imposed for each murder.

The defendant argues that the trial court failed to take into account the mitigating circumstance of his young age. He argues that this failure to take into account a mitigating circumstance requires a reweighing of the circumstances, citing *State v. Spain*, 263 Kan.

708, 953 P.2d 1004 (1997). In *Spain*, we determined that the trial court erred in finding an aggravating circumstance existed and remanded the case for resentencing in light of that error. 263 Kan. at 725.

While the defendant now argues that the trial court should have considered his young age as a mitigating factor, he did not present his age as a mitigating factor to the trial court before sentencing. The record establishes that the only mitigating factor presented at trial was the defendant's lack of significant criminal history. Thus, the trial court properly weighed this mitigating factor during sentencing against the aggravating factor.

**Consecutive Hard 40 Sentences**

The defendant advances several arguments concerning his final sentences. First, he contends that it violates double jeopardy to apply the aggravating factor in K.S.A. 21-4636(b), that he killed more than one person, to both convictions. His claim is that one aggravating factor is used twice—once in each hard 40 sentence. He also claims that in addition to using such aggravating factor twice, the court used it a third time for the imposition of consecutive sentences. The defendant's claims are without merit.

This same issue was recently resolved contrary to the defendant's assertion in *State v. Brady*, 261 Kan. 109, 929 P.2d 132 (1996). We held:

"Brady did not receive multiple punishments for the killing of Flynn and Wilcox. Instead, Brady received a life sentence for the murder of Wilcox, which was enhanced to a hard 40 sentence because the murder occurred in the midst of a killing spree, making the murder deserving of extra punishment. Brady also received one punishment for the murder of Flynn, a life sentence which was enhanced to a hard 40 sentence because the murder occurred in the midst of a killing spree, making the murder deserving of extra punishment. The fact that two enhancements were imposed for the same killing spree is irrelevant. Each murder was worse and deserving of more punishment because it took place in the midst of a killing spree." 261 Kan. at 120.

*Brady* also noted that the action taken was consistent with the expressed intent of the legislature:

"The legislature did not specifically prohibit the use of this [aggravating] factor in this way. If the legislature had wished to prohibit the use of the factor in this way,

it certainly knew how to do so." . . . Since the legislature did not specifically prohibit the use of this [aggravating] factor twice, once for each murder conviction, then the legislature must have intended to allow the aggravating factor to be used in such manner." 261 Kan. at 117.

"If the legislature chooses to alter the way in which this aggravating factor is used, it of course may do so. The trial court's application of the same aggravating factor—that Brady knowingly or purposely killed more than one person—to both first-degree murder sentences was not in error, even though both murders occurred in the same course of conduct and Brady was separately convicted for each murder." 261 Kan. at 120.

The rationale of *Brady* is equally applicable to the present case. The defendant did not receive multiple punishment because the trial court applied the aggravating factor to both counts in imposing the hard 40 sentence.

Generally, it is within the trial court's sound discretion to determine whether a sentence should run concurrent with or consecutive to another sentence. K.SA. 21-4608. See also *State v. Cashman,* 23 Kan. App. 2d 580, 582, 932 P.2d 469 (1997) (holding that K.S.A. 21-4608 provides the trial court discretion to run sentences concurrently or consecutively).

The final contention of the defendant is resolved by our decision in *State v. Stafford,* 255 Kan. 807, 878 P.2d 820 (1994). Stafford was sentenced to two hard 40 terms based in part on the aggravating circumstance that he caused the death of more than one person. The trial court then ran the hard 40 sentences consecutively, with one of the bases being that the defendant killed two persons. We held that this punishment did not constitute a double jeopardy violation and stated:

"[R]elying upon a particular aggravating circumstance in imposing consecutive sentences when that circumstance has already been relied upon in imposing the hard 40 sentence, even if that circumstance is the sole reason for imposing consecutive sentences, is not inappropriate." 255 Kan. at 818.

This court further noted that " 'the double jeopardy protection . . . "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." ' " 255 Kan. at 819 (citing *Ohio v. Johnson,* 467 U.S. 493, 499, 81 L. Ed. 2d 425, 104 S. Ct. 2536 [1984]). The analysis of the "limits established by the legislature" in *Stafford* was the same as that

which this court later used above in *Brady*. We again stated in *Stafford* that:

"[I]f the legislature had intended to preclude an aggravating factor relied upon by the jury in recommending the hard 40 sentence from also being relied upon by the trial judge as a factor in imposing sentence or in determining whether sentences imposed should run concurrently or consecutively, the legislature would have so stated." 255 Kan. at 819.

*Brady* and *Stafford* control the outcome of this issue. It does not violate double jeopardy to apply the same aggravating factor—that the defendant killed more than one person—to both convictions in imposing the hard 40 sentence on each count or in running those terms consecutively.

Affirmed.

ALLEGRUCCI, J., concurs in the result.