(185 P.3d 277)
No. 96,497

STATE OF KANSAS, *Appellee*, v. JERRY LEE BARNEY, *Appellant*.

Opinion

filed October 5, 2007.

*Rachel Pickering*, of Kansas Appellate Defender Office, for appellant.

*Robert D. Hecht*, district attorney, *Jamie L. Karasek*, assistant district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before GREENE, P.J., MALONE and LEBEN, JJ.

MALONE, J.: Jerry Lee Barney appeals his convictions and sentences for aggravated burglary, burglary, theft, and criminal damage to property. Barney raises the following issues on appeal: (1) the district court erred in admitting evidence of a police dispatch statement made as a result of an anonymous phone call; (2) there was insufficient evidence to support Barney's convictions of aggravated burglary, burglary, and criminal damage to property; (3) the district court erred in ordering Barney to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees; and (4) the district court erred in basing the term of Barney's sentence on his criminal history which was not proven to a jury beyond a reasonable doubt. We affirm Barney's convictions and the term of his sentence but reverse and remand on the BIDS issue.

On June 18, 2005, Topeka police officers John Trimble and David Gogian received a dispatch call at 1:46 p.m. The dispatcher had received an anonymous call which reported a suspicious person going to doors, peeping in windows, and ringing doorbells in the 300 block of Broadmoor and in the 300 block of Kendall in Topeka. Dispatch described the individual as a "white male, possibly balding, wearing a white tank top and blue [jean] shorts."

The two officers immediately went to the area and searched for an individual matching the description, but could not find anyone. They left the area around 2 p.m. At 3:32 p.m., the officers received another dispatch to a burglary that had taken place within the previous 2 hours. The location of the burglary was about 3 or 4 blocks west of the initial suspicious person call. After Gogian finished taking the burglary report, the two officers parked about ½ block away in hopes of seeing an individual matching the description of the suspicious person.

A short time later, a man matching the description of the suspicious person walked near the police car. Trimble exited the vehicle and spoke to the individual, who was later identified as Barney. Barney was carrying a Dillard's plastic bag which contained jewelry, a prescription bottle belonging to Nexelina Schumacher, and Dillard's receipts and clothing tags. Trimble learned through dispatch that Schumacher lived at 605 Fillmore and that Schumacher had reported a burglary earlier that afternoon.

Trimble then handcuffed Barney and searched him. Trimble found a cell phone, a pocket full of change, two $20 bills, one $10 bill, and two $5 bills. Trimble called a number logged on the cell phone and learned that the phone belonged to Ellen Malloy, who lived at 125 S.W. Greenwood, which was 3 to 4 blocks from where the officers had originally been searching for the suspicious male.

The officers then went to Malloy's residence. Malloy reported that someone had entered her residence earlier that afternoon and had stolen two $20 bills, one $10 bill, two $5 bills, and some coins from her purse. She also identified the cell phone found in Barney's possession by serial number, as well as eight rings and two necklaces that had been in the Dillard's bag.

The two officers also went to Schumacher's residence. Schumacher identified the prescription bottle found in Barney's possession as being hers. She also told the officers that earlier in the afternoon, while two of her children were upstairs playing, someone had forced entry into her home. Schumacher showed the officers where the door had been forced open. Pieces of wood were laying on the floor from where it had been kicked in. The lock was also broken.

The State charged Barney with aggravated burglary of Schumacher's residence, burglary of Malloy's residence, criminal damage to Schumacher's door, and two counts of theft. Barney filed a motion in limine to exclude as hearsay the statements made by the anonymous caller which were repeated in the police dispatch. The district court overruled the motion, finding that the statements were not offered to prove the truth of the matter asserted.

The case proceeded to a jury trial. The State's witnesses were Trimble, Gogian, Malloy, Schumacher, and Schumacher's daugh-

ter, who was playing in the house at the time of the burglary. During the trial, Trimble testified about the police dispatch statement made as a result of the anonymous phone call. The district court instructed the jury that the testimony was allowed "for the limited purpose of explaining the officer's actions" after receiving the dispatch, and the testimony should not be considered by the jury "to establish the truth of the information received by the officer."

Barney did not testify at trial and he called no witnesses. However, Barney argued the State failed to prove the charges beyond a reasonable doubt because there were no eyewitnesses placing Barney inside the burglarized residences and Barney's fingerprints were not found in either residence. Barney was found guilty as charged. Based on his criminal history, Barney received a presumptive sentence of 120 months' imprisonment. He was also ordered to reimburse BIDS for attorney fees in the amount of $600. Barney timely appeals.

### Police dispatch statement

Barney first claims the admission of Trimble's testimony regarding the police dispatch statement made as a result of the anonymous phone call was error. The anonymous call had reported a suspicious person going to doors and peeping into windows in a Topeka neighborhood. The caller gave a description of the person, which was repeated in the police dispatch. Barney asserts the testimony regarding the police dispatch statement constituted inadmissible hearsay evidence. He also claims the evidence violated his rights under the Confrontation Clause of the United States Constitution.

Although Barney raised this issue in district court by filing a motion in limine to exclude the testimony, the record reflects that Barney failed to make a contemporaneous objection to the evidence when it was admitted at trial. As a result, normally this issue would not be properly preserved for appeal. See *State v. Decker*, 275 Kan. 502, 507, 66 P.3d 915 (2003). However, Barney claims he made a continuing objection in district court to the admission of the evidence. The record on appeal does not reflect when Barney made a continuing objection to the evidence. The first time

defense counsel mentioned a continuing objection on the record occurred at the instruction conference near the end of the trial. However, we note with significance that at the instruction conference the prosecutor acknowledged it was the State's understanding that defense counsel had a continuing objection to the testimony regarding the dispatch statement. Furthermore, as argued in this case, the issue involves only a question of law arising on proved or admitted facts. See *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007). For these reasons, we will address the merits of Barney's claim.

When an appellate court considers a challenge to the district court's admission of evidence, it must first consider whether the evidence is relevant. K.S.A. 60-407(f); *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). After relevance is established, "evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question." *Gunby*, 282 Kan. at 47. When the issue involves the adequacy of the legal basis on which the district court decided to admit or exclude evidence, the appellate court reviews the decision de novo. 282 Kan. at 47-48.

Hearsay is evidence of "a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." K.S.A. 2006 Supp. 60-460. "Testimony is not inadmissible as hearsay evidence when it is not offered to prove the truth of the matter asserted." *State v. Crowley*, 220 Kan. 532, 536-37, 552 P.2d 971 (1976).

The district court relied on *State v. Laubach*, 220 Kan. 679, 556 P.2d 405 (1976), in ruling that the testimony regarding the police dispatch statement was admissible. In *Laubach*, the defendant allegedly robbed a hotel night clerk. A description of the robber was sent out to various motels and a few hours later a motel employee reported to the police that the suspect was trying to check into that motel. All this information, including the robber's description, was reported by one police officer to another police officer, which led to the defendant's arrest. At trial, the defendant objected, as hearsay, to the testimony from an investigating officer about the de-

scription of the suspect he had received from another officer. The trial court ruled the testimony was admissible because it was not offered to prove the truth of the matter asserted, and the Supreme Court agreed. The court reasoned the statement did not place the defendant at the scene of the crime, but rather the testimony was introduced to explain the officer's actions in the investigation of the crime. 220 Kan. at 682.

In *State v. Hollaway*, 214 Kan. 636, 522 P.2d 364 (1974), the defendant was charged with aggravated robbery of a market. After the robbery, the defendant sped away in a car driven by another man. A description of the car was obtained and reported over police dispatch. At trial, some of the police officers referred to statements made by the police dispatcher regarding the route the defendant was taking in his getaway car. The defendant contended the police dispatch statements were hearsay, but the court found the defendant's contention to be without merit. The court found that the evidence of the dispatch calls provided an explanation of the officers' actions and was not inadmissible hearsay. 214 Kan. at 639.

In *State v. Hall*, 220 Kan. 712, 556 P.2d 413 (1976), the defendant was charged with burglary of a J.C. Penney store. A witness saw the defendant leaving the store, carrying several suits on hangers while the store alarm was ringing. The witness described the defendant to the police, and the description was dispatched to patrol officers, which led to the defendant's arrest. The court held the details of the police dispatch were admissible in evidence because the evidence was only offered to explain the police officers' actions in locating the defendant. 220 Kan. at 717; see also *State v. Ritson*, 215 Kan. 742, 748, 529 P.2d 90 (1974) (police dispatch statement held admissible when not offered to prove truth of the matter asserted); *State v. Trotter*, 203 Kan. 31, 37, 453 P.2d 93 (1969) (police dispatch statement held admissible when offered only to explain officer's actions in locating defendant).

However, there are limits to the admissibility of hearsay statements in this context. In *State v. Jamison*, 269 Kan. 564, 570, 7 P.3d 1204 (2000), the court found that the substance of an anonymous phone call received by a police officer was inadmissible

hearsay when it tended to identify the accused and establish his guilt. In *Jamison*, a witness testified at trial that " '[t]he [anonymous] caller said that the shooter, E-Bud, had dark skin and walks with a limp. Stated that he had been shot not long ago. And that E-Bud was planning on going to L.A. and was going to be leaving Wichita by bus, possibly a Greyhound, on the 9th ' " 269 Kan. at 570. The court concluded that the evidence should not have been admitted because the substance of the call identified the shooter by his gang name, "E-Bud," and established his guilt of the crime charged. 269 Kan. at 570.

In *State v. Thompson*, 221 Kan. 176, 558 P.2d 93 (1976), the defendant was a suspect in an aggravated robbery. The police received an anonymous phone call advising the crime being investigated was committed by " 'Crazy John.' " 221 Kan. at 179. The police officer used this information to identify and locate the defendant as the person who had committed the robbery. The State argued the testimony regarding the anonymous phone call was admissible because it only explained the police officer's actions in locating the defendant. However, the court ultimately found that the testimony regarding the anonymous phone call was inadmissible because it identified a particular individual who had committed a particular crime. The court reasoned that where the information from the anonymous call, as related to the jury, directly or by necessary inference pointed to the defendant's guilt, the testimony was inadmissible hearsay. 221 Kan. at 178-79.

In this case, the anonymous caller did not identify Barney by name and did not establish his guilt of any crime. Instead, the anonymous call, which was repeated over dispatch, merely provided a description of a man who was acting suspiciously in a certain neighborhood. We agree with the district court that the testimony regarding the police dispatch statement was not offered to prove the truth of the matter asserted. Instead, the testimony was only offered to explain the officers' actions after receiving the dispatch and to explain how the officers initially approached Barney as a suspect. Thus, the evidence did not constitute inadmissible hearsay.

Moreover, the district court gave the jury a limiting instruction on how to consider and weigh the evidence concerning the police dispatch statement. Instruction No. 7A that was given to the jury stated: "The court has allowed you to hear the testimony of Officer Trimble concerning the contents of a police dispatch. The testimony was allowed solely for the limited purpose of explaining the officer's actions thereafter. This testimony should not be considered by you to establish the truth of the information received by the officer." Thus, the jury was aware of the limited purpose for which the police dispatch evidence was offered. Absent evidence to the contrary, it is presumed that the jury followed the instructions of the court. *State v. Johnson*, 190 Kan. 795, 797, 378 P.2d 167 (1963).

Barney also asserts Trimble's testimony regarding the police dispatch statement violated his rights under the Confrontation Clause of the United States Constitution as enunciated by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 53-54, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The Sixth Amendment to the United States Constitution provides that a criminal defendant shall have the right to be confronted with witnesses against him or her. The Sixth Amendment applies to the states through the Fourteenth Amendment. *State v. Henderson*, 284 Kan. 267, Syl. ¶ 1, 160 P.3d 776 (2007).

In *Crawford*, the United States Supreme Court held that out-of-court statements by a witness that are testimonial in nature are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. 541 U.S. at 53-54. However, the Supreme Court also stated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n.9. The federal appellate courts have consistently followed *Crawford*'s lead and held out-of-court statements offered for purposes other than to prove the truth of the matter asserted do not raise a confrontation issue. See, *e.g., United States v. Maher*, 454 F.3d 13, 20 (1st Cir. 2006) (nontestifying informant's out-of-court testimonial statements admitted through a police officer's testimony not offered to prove the

truth of the matter asserted); *United States v. James*, 487 F.3d 518, 525 (7th Cir. 2007) (stating Sixth Amendment does not bar out-of-court statements when statements not offered to prove truth of matter asserted).

This court has also ruled that when statements are not offered to prove the truth of the matter asserted, but are offered to explain the police officer's actions, then the statements are not hearsay and their admission does not violate *Crawford*. *State v. Adams*, 35 Kan. App. 2d 439, 443-44, 131 P.3d 556 (2006). As we have discussed, Trimble's testimony regarding the police dispatch statement was not offered to prove the truth of the matter asserted, and therefore did not violate Barney's rights under the Confrontation Clause.

Finally, even if the district court may have erred in admitting the testimony regarding the police dispatch statement and the anonymous call, we conclude that the error was harmless under the facts and circumstances of this case. "Errors that do not affirmatively cause prejudice to the substantial rights of the defendant do not require reversal where it appears from the whole record that substantial justice has been done. [Citation omitted.]" *State v. Francis*, 282 Kan. 120, 137, 145 P.3d 48 (2006). Even an error of constitutional magnitude may be considered harmless if the appellate court can declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Brown*, 280 Kan. 65, 77, 118 P.3d 1273 (2005). Here, the overwhelming evidence that convicted Barney was the fact that he was found with all the stolen property within 2 hours of the burglaries and within the same neighborhood of the burglaries. We are convinced the outcome of Barney's trial would have been the same, even without the testimony regarding the police dispatch statement.

## Sufficiency of the evidence

Barney next claims the evidence was insufficient to support his convictions of aggravated burglary, burglary, and criminal damage to property. Barney contends the State did not prove that he knowingly entered or remained in Schumacher's or Malloy's residence. He asserts that the evidence was insufficient because there was no

eyewitness to his entry into either residence and because there were no fingerprints found in either residence.

"When the sufficiency of the evidence is reviewed in a criminal case, this court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006).

Barney fails to realize that a conviction for even the gravest offense may be sustained by circumstantial evidence. Circumstantial evidence is evidence of events or circumstances from which a reasonable factfinder may infer the existence of a material fact in issue. *State v. Lopez*, 36 Kan. App. 2d 723, 725, 143 P.3d 695 (2006). Entry, like any element of a crime, may be proven by circumstantial evidence. See *State v. Nesmith*, 220 Kan. 146, 150, 551 P.2d 896 (1976) (fact that defendant was found carrying property away from victim's residence was sufficient to establish burglary conviction even though defendant was never seen inside the residence).

Here, when the officers stopped and searched Barney, he was carrying a bag containing a prescription bottle belonging to Schumacher. Schumacher testified that someone had entered her residence without permission earlier that afternoon. She testified that her prescription bottle had been in her bedroom before she left that day. Schumacher testified that she did not give anyone, including Barney, permission to come into her residence or to take her prescription medication. Both Schumacher and her daughter testified that Schumacher's children were home upstairs during the time the house was burglarized.

When Barney was stopped, he was also carrying a cell phone identified by its serial number to be Malloy's, several pieces of jewelry identified by Malloy to be hers, and cash in the same denominations as was taken from Malloy. Malloy testified that she had been gardening in her yard earlier that afternoon. When Malloy entered her house after gardening, she discovered her purse was not in the same place she usually kept it and money was missing from the purse. She noticed other items in the house had been moved and her cell phone was missing. She also discovered dresser

drawers were open and jewelry was missing. Malloy did not give anyone permission to go into her house that afternoon, and she did not give anyone permission to take her jewelry, phone, and money.

The fact that Barney was arrested in the same neighborhood of the burglaries within 2 hours after the burglaries with property belonging to the two victims whose residences had been invaded was sufficient to establish a reasonable inference that Barney had entered the two residences without permission. Thus, the State presented sufficient circumstantial evidence for a rational fact-finder to find Barney guilty of aggravated burglary of Schumacher's residence and burglary of Malloy's residence.

As for the criminal damage to Schumacher's property, Schumacher showed the police where her door had been forced open. She testified that pieces of wood were laying on the floor from where it had been kicked in. The lock was also broken. This evidence, when coupled with Barney's possession of property taken from the residence within 2 hours of the burglary, established sufficient evidence to support Barney's conviction of criminal damage to property.

### Attorney fees

As part of his sentence, the district court ordered Barney to reimburse BIDS for attorney fees in the amount of $600. Barney argues that the district court failed to inquire into his financial ability to pay these fees, as required by K.S.A. 2006 Supp. 22-4513 and *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006). The State concedes that the district court failed to make the necessary findings to impose the fees. Therefore, that part of Barney's sentence imposing BIDS attorney fees is reversed and remanded for resentencing with directions that the district court comply with K.S.A. 2006 Supp. 22-4513 and with *Robinson* regarding the assessment of attorney fees.

### Apprendi issue

Finally, Barney claims his constitutional rights were violated because the term of his sentence was based upon a criminal history which was not proven to a jury beyond a reasonable doubt. Barney

asserts this violates the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Nonetheless, Barney concedes that *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002), controls the issue in Kansas. The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). Moreover, recent Kansas Supreme Court case law has affirmed *Ivory*. *State v. Gonzalez*, 282 Kan. 73, 115-19, 145 P.3d 18 (2006) (affirming *Ivory* subsequent to *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 [2004]). Thus, Barney's claim fails.

Affirmed in part, reversed in part, and remanded for resentencing on the BIDS attorney fees.